KENNEDY, Respondent, vs. LAKE SUPERIOR TERMINAL & TRANSFER RAILWAY COMPANY, Appellant.

*March 13 — April 14, 1896.*

*Railroads: Injury to employee coupling cars: Obstruction between rails: Contributory negligence: Assumption of risk: Court and jury.*

1. A railway company is liable for an injury to an employee engaged in coupling cars, caused by his stumbling over piles of ashes which the company had negligently permitted to remain between the rails, if he was not guilty of contributory negligence and had not assumed the risk of injury from that cause.

2. The foreman of a switching crew in the employ of a terminal and transfer railway company using forty miles of track and seventy switches, besides spur tracks, was injured while attempting, in the performance of his duties, to make a coupling between freight cars on a spur track by stumbling over piles of ashes between the rails and being caught between the cars. Upon the evidence — tending to show, among other things, that the day was dark, with rain and sleet falling; that the ash piles were from four to eight inches high, and covered with snow and ice; and that the foreman, whose duties did not require him to observe and make safe the condition of the tracks, had never seen them — it is *held* that he was not chargeable, as matter of law, with contributory negligence or assumption of the risk.

Appeal from a judgment of the circuit court for St. Croix county: E. B. Bundy, Circuit Judge. *Affirmed.*

This action was commenced July 2, 1892, to recover damages sustained by the plaintiff by having his hand and wrist crushed and mangled while in the employ of the defendant, December 22, 1891, and engaged in coupling freight cars on the defendant's tracks in Superior, by reason of the alleged negligence of the defendant. The issue being joined, and at the close of the second trial thereof, the jury returned a special verdict to the effect: (1) That the plaintiff was injured while in the employ of the defendant; (2) that there were piles of ashes on the track of the defendant's railway, between the rails, at the time and place of the accident; (3) that the defendant was guilty of a want of ordinary care in permitting such ashes to be there, and such ashes did make said place not reasonably safe in which to make the coupling which the plaintiff was endeavoring to make; (4) that the defendant had, for some time previous to the accident, permitted persons occupying part of the Paden building to empty their ashes on the track in question, after the fact that they did so was known to the defendant's agents having charge of the track; (5) that such want of ordinary care was the proximate cause of the injury which the plaintiff received; (6) that such or similar ash piles had

been there prior to the accident during the month of November and until December 22, 1891; (7) that the height in inches of such ash piles was from four to eight inches; (8) that such ash piles were not made or placed there by the defendant or any of its servants while engaged in the service of the defendant; (9) that such ash piles were of such a nature, and had been there for such a length of time, that the defendant, or its officers and agents, whose duty it was to remove obstructions from such places, in the exercise of ordinary diligence ought to have discovered them before the accident and injury to the plaintiff, and removed them; (10) that the plaintiff's stumbling over the ash piles while attempting to make the coupling was the proximate cause of his injury; (11) that the plaintiff was not guilty of any want of ordinary care in trying to make the coupling in the way he did, under all the circumstances; (12) that the plaintiff did not, at the time he attempted to make the coupling, know of these ash piles; (13) that the plaintiff would not, by the exercise of ordinary care, have discovered the existence, character, and location of the ash piles, which he claims contributed to his injury, before he undertook to make the coupling; (14) that the fact that the cars were coming in at the speed they were, and that each of the cars to be coupled had upon it double deadwoods, did not make it so unsafe that it was any want of ordinary care and prudence for the plaintiff to attempt to make the coupling, taking into consideration his knowledge of the circumstances; (15) that it will take $5,000 to compensate the plaintiff for the injury he received.

From the judgment entered upon such verdict in favor of the plaintiff the defendant appeals.

For the appellant there was a brief by *Butler & Grace* and *W. F. McNally*, and oral argument by *L. S. Butler*.

For the respondent there was a brief by *Ross, Dwyer & Hanitch*, and oral argument by *Louis Hanitch*.

CASSODAY, C. J.   The main track of the defendant's rail-
way at the place in question runs east and west, and crosses
Tower avenue at right angles.   The first street east of Tower
avenue is Ogden avenue, and the first street east of that is
John avenue.   From Tower avenue to John avenue the dis-
tance is more than 600 feet.   Near the west side of John
avenue is a switch connecting a spur or stub track with the
defendant's main track, and on the south side thereof, and
which spur track runs west from the switch and parallel to
and four feet south of the main track to within two feet of
the east sidewalk of Tower avenue, where it terminates.   On
the south side of the spur track is an alley parallel with it,
and nine or ten feet wide, connecting with Tower avenue
and the other avenues mentioned.   Immediately south of the
west end of the spur track and the alley is Paden's build-
ing, mentioned in the verdict, extending from Tower avenue
east and along the alley for a distance of about 100 feet.
By reason of that building the spur track is called "Paden
spur."   Certain packing companies had their offices in Paden's
building, and "Paden spur" was used for storing meat and
other freight cars.   On the morning in question six or seven
freight cars attached to each other were standing on the
west end of "Paden spur," the car at the west end being a
meat car standing within two or three feet of the end of
the rails, with no bumpers or other obstruction to prevent
cars from running off the ends of the rails.

The evidence in behalf of the plaintiff tends to prove that
the morning was dark, wet, and sloppy, with rain and sleet
falling, and some snow and ice on the ground,— being De-
cember 22, 1891; that about 9 o'clock of that morning the
plaintiff, who was in the employ of the defendant as fore-
man of a switching crew, came from the west across Tower
avenue on the main track with his crew, engine, and one
meat car, intending to set the car he was thus bringing in
upon "Paden spur," next to the meat car thus standing on

the west end of that spur; that to effect that object he directed his men to cut off the meat car on the main track just before reaching the switch, and then to pass on east with the engine beyond the switch, and then turn the switch and back up on "Paden spur" with the engine, and take out all the cars standing thereon except the one meat car standing at the west end thereof, and then, after taking those cars out onto the main track, to back up and hitch the meat car so standing on the main track to the rear end of the train, and then go east on the main track beyond the switch and back up on "Paden spur," so as to bring the two meat cars together; that before such orders of the plaintiff were executed, and just after his engine had so passed east over Tower avenue, the plaintiff jumped off the engine, and went to "Paden spur," and pulled the pin which coupled the meat car thereon to the other freight cars; that he then stepped out onto the main track; that, observing that the meat car standing on "Paden spur" was very near to the end of the rails and liable to run off, he thought he would try the brake thereon, and for that purpose climbed up the ladder on the north side and at the west end thereof, and then went on the top to the east end of that car and tried to set the brake, but found the chain was too long and would not set, and then climbed down the same ladder and put some blocks of wood under the wheels of the meat car, at the west end thereof, so as to prevent it, when being coupled to the other cars, from running off the rails onto the sidewalk; that he then went out along the main track towards the other meat car standing thereon, to get its number; that about that time his crew coupled onto it, and started with it east; that by reason of the weather he then walked up and down on the main track, waiting for the cars to be set in on the "Paden spur;" that when he saw them coming he observed that there was no one to make the coupling, and so, with the intention of making the coupling himself,

he walked to the side of the coming cars, moving at from three to five miles per hour, and gave the car-length signal, and as they came nearer he repeated the same, and then gave a signal to slow up; that, as the link of the moving car was hanging down pretty low, he tried it to see whether it was loose; that he then gave the stop signal, which was not obeyed, and then gave another, and went in to make the coupling when the cars were two or three feet apart; and while in the act of guiding the link to get it under the deadwoods, he stumbled with his right foot over the piles of ashes mentioned in the verdict, and grabbed hold of the end of the ladder, and raised himself up, and the deadwoods caught his hand and wrist, and crushed and mangled the same so that amputation became necessary.

1. The first ten findings of the jury mentioned in the foregoing statement appear to be sustained by the evidence. Those findings establish the negligence of the defendant in not furnishing a reasonably safe place to couple such cars, and that such negligence was the proximate cause of the plaintiff's injury. In *Bessex v. C. & N. W. R. Co.* 45 Wis. 477, it was held to be the duty of the company to keep its tracks free from obstructions which would render the moving of cars along them unnecessarily hazardous to its employees charged with that work; and if, in consequence of its neglect of that duty, such an employee was injured, the company might be held liable for the injury; that in such a case the negligence of the *agent* of the company having the care and control of one its yards in permitting obstructions to accumulate along the tracks in such yard *was the negligence of the company.* Such rules have repeatedly been sanctioned by this court. *Hulehan v. G. B., W. & St. P. R. Co.* 58 Wis. 319; *S. C.* 68 Wis. 526; *Nadau v. White River L. Co.* 76 Wis. 127; *Johnson v. First Nat. Bank,* 79 Wis. 421; *McClarney v. C., M. & St. P. R. Co.* 80 Wis. 280; *Stackman v. C. & N. W. R. Co.* 80 Wis. 432; *Kelleher v. M. & N. R. Co.*

80 Wis. 588; *Engstrom v. Ashland I. & S. Co.* 87 Wis. 171; *Cadden v. Am. S. B. Co.* 88 Wis. 409. This question was not present upon the former appeal, but it was intimated pretty strongly by ORTON, C. J., that the only cause of action which had been alleged and proved by the plaintiff was the presence of the heaps of ashes, and that that cause of action had been withdrawn from the jury by the trial court. *Kennedy v. L. S. T. & T. Co.* 87 Wis. 28.

2. The other important questions in this case are whether the plaintiff assumed the risk or was guilty of contributory negligence. The eleventh, twelfth, thirteenth, and fourteenth findings of the jury, mentioned in the foregoing statement, are to the effect that he was not guilty of such negligence. The plaintiff had been the foreman of a switching crew from the previous August; at first on a night crew, and then on a day crew. The evidence tends to prove that his duties as such foreman were similar to those of a conductor; that he had a book, and kept track of all transfers of cars, the tracks from which they were taken and the place at which they were delivered, whether empty or loaded, and made reports of the same, and looked after the engine in general; that he was to keep off tracks upon which trains were liable to be, and to have general charge of the running of the switch engine and the cars attached to it, and to couple and uncouple cars when helpers were not present; that the defendant, as its name imports, is a terminal railway company, organized by the different railway companies entering Superior, and is operated for the benefit and convenience of such companies in reaching the widely scattered docks and other industries doing business at Superior; that the tracks of the defendant at Superior are extensive, and besides it has the privilege of using, and does use, the tracks and yards of the other companies mentioned, so that the switching crew of which the plaintiff was such foreman used, in the course of this work, some forty miles of track and seventy switches, besides nu-

merous spur tracks, in yards and upon tracks in different parts of the city, and several miles apart. In view of these things, and the general nature of the plaintiff's duties, and the facts which the plaintiff's evidence tends to prove, as indicated, that the morning was dark, wet, and sloppy, with rain and sleet falling, and some snow and ice on the ground, we cannot say, as a matter of law, that the plaintiff was guilty of contributory negligence. The verdict finds that the ash piles were from four to eight inches high, and, since they were covered with snow and ice, they might very easily be unobserved by one walking over them upon such a morning and under the circumstances mentioned. The case is very different than it would have been if the plaintiff's duties had required him to observe and make safe the condition of the tracks in the yard where "Paden spur" was situated.

We cannot say, under the circumstances mentioned, as a matter of law, that the plaintiff assumed the risk. This court has repeatedly held, in effect, that before an employee can be held to have assumed an unusual or extraordinary risk, he must know, or have reasonable means of knowing, of the precise danger to which he is exposed and which he thus assumes; and that a mere vague surmise of the possibility of danger is not enough to take the case from the jury. *Dorsey v. Phillips & C. Const. Co.* 42 Wis. 583. In that case RYAN, C. J., said, in effect, that even where those operating trains have actual knowledge of the dangerous proximity of adjacent objects, yet it would be unreasonable to require them "to retain constantly in their minds an accurate profile of the route of their employment, and of collateral places and things, so as to be always chargeable, as well by night as by day, with notice of the precise relation of the train to adjacent objects." Page 599. This language is peculiarly applicable here. To the same effect, *Nadau v. White River L. Co.* 76 Wis. 132; *Kelleher v. M. & N. R. Co.* 80 Wis. 584; *Haley v. Jump River L. Co.* 81 Wis. 426; *Colf*

*v. C., St. P., M. & O. R. Co.* 87 Wis. 276. The plaintiff testified positively that he saw the ash piles *after* the injury, but never saw them *before* the accident; and his testimony is undisputed as to that fact.

The only remaining question upon the point we are now considering is whether the plaintiff was guilty of any want of ordinary care in failing to observe the ash piles before or at the time he attempted to make the coupling. Under the facts and circumstances mentioned, we cannot say, as a matter of law, that the plaintiff was guilty of such want of ordinary care, but must hold that the question was properly submitted to the jury. The finding of the jury in favor of the plaintiff upon that question is, therefore, conclusive.

There are numerous exceptions in the case, but what has been said disposes of all questions calling for consideration.

*By the Court.*— The judgment of the circuit court is affirmed. .