McDOUGALL, Respondent, vs. THE ASHLAND SULPHITE-FIBRE COMPANY, Appellant.

*June 12 — November 16, 1897.*

*Court and jury: Master and servant: Negligence: Practice: Special verdict.*

1. If a master employs a servant to do work in a dangerous place, or where the mode of doing the work is dangerous, though apparent to a person of capacity and knowledge of the subject, yet, if the servant employed to do such work or in such a place, from youth, inexperience, ignorance, or want of general capacity, may fail to appreciate the danger, it is a breach of duty on the part of the master to expose him to such dangers, even with his own consent, unless he first gives him instructions or cautions sufficient to make him comprehend them and do his work safely, with proper care on his part.

2. Where the master neglects to instruct a servant of that character in respect to the dangers of his employment, the latter cannot be held to have assumed the risk.

3. In a case where a servant, without experience in that work, was directed to operate a machine for removing the bark from pulp wood,

McDougall vs. The Ashland Sulphite-Fibre Co.

which was defective for want of a belt shifter, and was instructed by the foreman how to shift the belt by the use of a stick, and, not knowing that it was a dangerous mode or that a shifter was necessary, followed that mode for fifty-three days, and then, while attempting to shift the belt in that mode, had his arm caught by the belt and broken, *held*, that the questions whether he was guilty of contributory negligence or had assumed the risk were for the jury.

4. Whether such servant was fairly and properly instructed in respect to the manner of shifting the belt, and also whether the machine was equipped and in a reasonably safe and proper condition for use without a belt shifter, were also questions for the jury.

5. A general verdict, with answers to special questions submitted to the jury by request of a party, is not to be deemed a special verdict, in determining its sufficiency.

6. A mere request by one party to submit certain questions to the jury as a special verdict is not sufficient to make it the duty of the court to do so, but it has a discretion in that respect. A verdict which is sufficient under sec. 2858, S. & B. Ann. Stats., and concludes the whole issue, will not be disturbed on appeal.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

This was an action to recover damages for an injury to the plaintiff's person sustained while in the employ of the defendant company, operating a machine to remove the bark from pulp wood, and in consequence of the alleged acts and negligence of the defendant, among which was the failure to furnish said machine with a belt shifter, etc.

At the trial before the court and jury, the plaintiff testified, among other things, in substance, that he was a common laborer, thirty-four years of age, and hired to the defendant in August, 1893, and that the defendant's superintendent directed him to go to work on a machine propelled by steam power, called a "barker;" that he told him he had never worked around such a machine, and knew nothing about it whatever; that the superintendent told him to try it, but gave him no instructions in reference to the manner of doing the work or running the machine; that he com-

McDougall vs. The Ashland Sulphite-Fibre Co.

menced running it, and continued to the time he was injured, a period of fifty-three days; that the "barker" was a machine with revolving knives, for the purpose of cutting the bark off timber used in making pulp; that the knives were attached to a cylinder, which was propelled by a belt over a pulley on the cylinder, which belt also passed over another pulley on the shaft; that he did the work of holding the sticks up to the "barker," so that the knives would get the bark off, but did not have charge of the machine or keep it in repair; that Dumas, the foreman, had charge of the machine, and kept it in repair; that he showed the plaintiff how to handle the machine, how to stop it, and how to shift the belt; that he took a short stick about eighteen inches or two feet in length, and put one arm through between the parts of the belt in front of the pulley, and one arm over the belt, then took hold of the stick, a hand on each end, and pulled it against the edge of the belt, with the stick towards him, and in that manner pulled the belt off the stationary pulley onto what is known as the "loose pulley;" that he showed the plaintiff twice how to do this, and directed him to do it in that manner, and that the plaintiff understood that that was the proper way to remove the belt.

He further testified that he had never worked around pulleys or belts before,— had never seen a belt removed from a pulley, and never knew how they were removed; that he did not know what a belt shifter was, and never heard of such a thing, and had no experience whatever in working around any such machine, and knew of no other or different way to remove the belt except as shown by the foreman; that such was the only way the foreman ever showed him to remove this belt, and he always removed the belt in exactly the manner in which he had been so shown until the time he was injured; that he did not know there was any danger in removing the belt in this manner, and was not informed of any danger; that before removing the belt, as

described, the foreman threw off the feed or clutch lever, and he then commenced pulling on the belt, after the machine had slowed down a little, and before it stopped, and he told him to do the same; that this is the way he always did it, and he never did it in any other way or manner; that sometimes the loose pulley, onto which he would pull the belt, would let the belt run back again on the tight pulley for a while; that at the time in question the foreman directed him to pull off the belt, and he threw off the clutch or feed, and ran around to the belt with a stick, put one hand under a part of the belt and the other hand over, and took hold of the stick, and commenced pulling towards him, to pull the belt over on the loose pulley as he had always done before; and, while doing so the belt caught the stick and carried it under the pulley, and also caught his arm, and carried it under the pulley, and broke it in three places, so that it is crooked, and he had been unable to do any work with it since that time.

On cross-examination he testified that he had worked in sawmills during the sawing season for a number of years, and had handled lumber over trimmers for twelve summers; that a trimmer machine is driven by a large belt, but, in handling such a machine, there is no occasion for shifting the belt which runs it; that prior to running the "barker," he had never had anything to do with taking off belts, and had never seen it done; that in the mills where he had worked there were many belts driving various machines; that he had never noticed them particularly, and personally had nothing to do with them, but saw them in operation every day; that in running the "barker," he shifted this belt two or three times each day, but did not know that there was any danger in shifting the belt in the way he did it.

Five millwrights, filers, and foremen in sawmills testified, in substance, that generally belt shifters are used for

tight and loose pulleys running together, and a belt shifter can always be put on; that they considered it dangerous to shift a belt with a stick, as plaintiff shifted this one; that it was dangerous to shift the belt without a belt shifter; that they had had experience of from ten to twenty years in their calling, and they had been in a great many manufacturing plants in the city of Ashland, where the accident occurred, and in other places in northern Wisconsin; that they did not know the machine in question, but, from the manner it was described, a belt shifter could be put on without trouble; that it was exceedingly dangerous to shift a belt with a stick, but a person without experience in handling belts would not appreciate the danger in shifting it in that manner; that the seam where the belt is sewed is apt to be rough, and it will catch the stick or clothes of a man shifting it in that way, and carry it on to the pulley. One witness testified that the barker was not complete without a belt shifter; that he was familiar with the manufacturing establishments at Ashland and surrounding cities, and knew that it was usual and customary to use a belt shifter on all such machines, and wherever a loose pulley is used. The plaintiff was corroborated by the testimony of other witnesses as to the manner in which he shifted the belt at different times, as described by him. Another witness testified that a man without experience might remove a belt every day for a year in the manner described by the plaintiff, and yet not be able to appreciate that there was a danger in doing it in that manner; that he never saw the belt shifted other than by the use of a short stick, but never saw a machine like the one in question before; that the belt was a six-inch belt, thirty feet long, and came up through an opening in the floor, and the top of the pulley was about three and one-half feet above the floor.

The defendant moved for a nonsuit, on the ground that the evidence showed the plaintiff had been guilty of contributory negligence, but the motion was denied.

McDougall vs. The Ashland Sulphite-Fibre Co.

One Wildhagen, an architect and civil engineer, testified that he was a stockholder in the defendant company, had built sulphite mills at various places, and that the main shaft of the mill is connected to the engine by the friction clutch; that he was at the mill every day; that, to take off the belt, they took a stick four feet long, set it against the foot of the machine, and pressed against the belt; that the stick was kept near the machine; that the machine was complete and in good order when the plaintiff was hurt; that he never saw a belt shifter used on a bark machine in a pulp mill; that he had seen a good many mills in this country, and had been in more than a dozen in this state, in each of which a barking machine like the one in question was used; that the bottom of the loose pulley was about twenty inches from the floor, and its diameter about fourteen inches; that the top of the machine was four feet three inches from the floor, and the top of the pulley three feet six inches. He testified that he never saw any one remove or shift the belt as the plaintiff did it, and that, if he had seen them do it that way, he would have stopped it right off; that a belt shifter was not necessary on machines that run all day, and that they are used on machines that run part of the time, so that the machine can be stopped without interfering with the other machinery; that such was the object of the idle or loose pulley on the "barker,"— the barker was running all the time; that he did not put a belt shifter on, because it would be in the way of taking off the belts. Considerable testimony was given tending to show that the plaintiff at times shifted or took off the belt with a stick about four feet long, and in different ways. It appeared that the fixed pulley in this case made 600 or 700 revolutions a minute.

The superintendent of the mill, Bryan, testified that he had had about twenty years' experience in the pulp-mill business, and during that time had had charge of about thirty machines at Appleton and other places, and had seen 700 or

800 machines in operation; that he had never seen a belt shifter on one of these machines, and that, to shift or remove the belt, they generally take a stick, and put it against the "barker" or on the floor, and push it one way or the other,— any kind of a stick three or four feet long; that sometimes he had seen short ones, not over a foot long; that it did not require much force to remove the belt; that one reason why they did not use belt shifters on the "barker" was that the pulleys were so close to the floor that the shifter would be in the way; that they are usually two feet to twenty-six inches from the floor; that the belts do not always run below, as in this case, but sometimes from above; that he did not see how a shifter could be put on to advantage where the "barker" runs through the floor, as this one. Dumas, the foreman, a millwright of seven years' experience, testified that he had instructed the plaintiff in respect to shifting or removing the belt, and showed him how to do it, taking a stick from three to four or six feet long; that he was to put the end of the stick against the leg of the machine for a purchase, and push the belt from the tight to the loose pulley; that the stick was kept standing near the machine; that he took the stick and shoved the belt, so as to show him; that he did that twice for him, and never told him to shift the belt in the manner described by the plaintiff.

In rebuttal, evidence was produced tending to show that a belt shifter could be conveniently put on the machine in question. A model and sketch of the machine appears to have been used on the trial before the jury, but they were not transmitted to this court, the want of which rendered the evidence in some respects obscure.

At the close of the evidence, the defendant asked the court to submit to the jury certain questions for a special verdict, some of which were refused. The material questions and answers were: "(3) Was defendant guilty of a want of ordinary care that caused the injury complained of? Ans. Yes.

McDougall vs. The Ashland Sulphite-Fibre Co.

(4) Was defendant guilty of negligence in furnishing plaintiff with a defective bark machine? Ans. Yes. (5) Was the plaintiff guilty of any want of ordinary care which in any manner contributed to his injury? Ans. No. (6) What damages has the plaintiff sustained by reason of his said injuries? Ans. $500. (7) We find for the plaintiff, and against the defendant." The defendant moved to set aside a certain part of the verdict, and substitute answers the effect of which would be to acquit the defendant of negligence and find the plaintiff had not used ordinary care, and to strike out the seventh finding of the general verdict as contrary to the special verdict and improper, and for judgment thereon in its favor. This was denied, as was also the defendant's motion to set aside the verdict, and for a new trial. Plaintiff had judgment on the verdict, from which the defendant appealed.

For the appellant the cause was submitted on the brief of *Lamoreux, Shea & Wright.*

For the respondent there was a brief by *Cate, Sanborn, Lamoreux & Park,* and oral argument by *D. F. O'Keefe.*

PINNEY, J. 1. The plaintiff was a common laborer, and had no experience in working with or around a barker or similar machinery. He had no knowledge or familiarity with the matter of the necessity or use of a belt shifter, or of the manner of shifting belts, though he had worked in and around sawmills. He did not know or understand that the manner in which he had been instructed to shift the belt on the barker was dangerous. The defendant's foreman in charge evidently understood that the plaintiff was without proper knowledge or experience in respect to the use or operation of the machine, and that it was necessary to instruct him. It is conceded that he proceeded to instruct him how he was to shift the belt, though there is a conflict of evidence as to what the instructions really were. It is evident from the verdict that the jury believed the testimony of the plaintiff

as to the instructions given, and as to his having followed them.

In *Jones v. Florence Mining Co.* 66 Wis. 277, this court said: "It is now clearly settled that if a master employs a servant to do work in a dangerous place, or where the mode of doing the work is dangerous and apparent to a person of capacity and knowledge of the subject, yet, if the servant employed to do work of such a dangerous character or in a dangerous place, from youth, inexperience, ignorance, or want of general capacity, may fail to appreciate the dangers, it is a breach of duty on the part of the master to expose a servant of such character, even with his own consent, to such dangers, unless he first gives him such instructions or cautions as will enable him to comprehend them, and do his work safely, with proper care on his part. This rule does not in any manner conflict with the other well-established rule that the employee in any particular business assumes all the risks and hazards which are incident to such business, when the employee is of sufficient intelligence and knowledge to comprehend the dangers incident to his employment; and in case of an adult person, in the absence of evidence showing the contrary, the presumption is that the employee has sufficient intelligence to comprehend the dangers incident to his employment." Where it is necessary that the employee should be instructed in respect to the dangers incident to the employment, neglect to discharge such duty is considered negligence on the part of the employer; and an employee does not assume the risk of the dangers incident to such hazardous employment, because he does not comprehend them, and the law will not therefore presume that he contracted to assume them.

It was a fair question for the jury in this case, upon the evidence, whether the plaintiff was fairly and properly cautioned and instructed in respect to the manner of shifting the belt, and also whether the barker was equipped, and in

a reasonably safe and proper condition for use without a belt shifter. The evidence tends to show that the plaintiff had no knowledge or experience sufficient to enable him to ·judge whether the shifting of the belt in the manner he had been instructed was or would be attended with danger. It was for the jury to say, under the circumstances, in acting as he did and in pursuing the instructions he had received from the foreman, whether the plaintiff assumed the risk. " The plaintiff cannot be supposed or assumed to have ac-cepted in advance a peril which he could not estimate, and the extent of which, for lack of experience, he could not have known. Where there is any doubt whether the employee was acquainted, or ought to have been acquainted, with the risk, the determination of the question is necessarily for the jury." *Rummell v. Dilworth, P. & Co.* 111 Pa. St. 343, 351; *Nadau v. White River L. Co.* 76 Wis. 132.

There is no evidence tending to show that the plaintiff's attention had been called to anything to indicate that it was dangerous or hazardous to pursue the course he did. It can-not, we think, be fairly said that he assumed any risk or danger not incident to the service, unless he had notice of it; nor that he is chargeable with negligence in following, as he did, the instructions of the foreman of his employer, unless the risk and danger of so doing were obvious and plain to an employee of ordinary intelligence and judgment. Where the risks and dangers are visible and any man of ordinary intelligence and in the exercise of ordinary care, although not an expert in the business, could not have failed to see and comprehend them, the employer is under no legal obli-gation to warn the servant of danger. But if there exist facts known to the employer, and unknown to the employee, increasing the risk of the employment, the employer is bound to disclose such facts to his employee; and, if he fail to do so, such failure would render him liable for an injury result-ing from the danger which was known to the employer, and unknown to the employee. Upon the facts appearing in the

evidence, we do not think that the court could rightfully pronounce against the plaintiff, either that he assumed the risk of any danger not fairly incident to the employment, or that he was negligent in accepting and continuing in the employment as he did.  He was a common laborer, and not familiar with the use of machinery.  The case falls within the rule so often declared and applied in cases of this character, that negligence is an inference to be drawn from the facts and circumstances disclosed by the evidence, and that when such facts and circumstances, though undisputed, are ambiguous and of such a nature that a reasonable man, unaffected by bias or prejudice, may disagree as to the inference or conclusion to be drawn from them, the question of negligence should be submitted to the jury.  And so as to the assumption of risk.  *Kaples v. Orth*, 61 Wis. 531; *Valin v. M. & N. R. Co.* 82 Wis. 6; *Hill v. Fond du Lac*, 56 Wis. 242.

The duty of the trial court in such cases was discussed in *O'Brien v. C. & N. W. R. Co.* 92 Wis. 340; and the rule stated in *Jones v. C. & N. W. R. Co.* 49 Wis. 352, was approved and applied, that, if the plaintiff gives any evidence to support his claim, the case must be submitted to the jury, although, in the opinion of the trial judge, it may be insufficient to sustain a verdict, or the decided weight of evidence is for the defendant.  In such case it is the duty of the court to submit the matter to the jury under proper instructions, and take their verdict thereon.  In *Bouck v. Enos*, 61 Wis. 661, the court said: "It is the province of the jury to determine, not only the credibility of witnesses and all disputed facts, but all conflicting inferences reasonably drawn from undisputed or admitted facts."  In *Kruse v. C., M. & St. P. R. Co.* 82 Wis. 568, the court say: "The long-established rule of this court is that a verdict for the defendant should only be directed when the plaintiff's evidence, under the most favorable construction it will reasonably bear, including all reasonable inferences from it, is insufficient to justify a verdict in his favor."  Manifestly, the rule is the

same in respect to directing a nonsuit. For the reasons already stated, we think the case was properly submitted to the jury.

The bill of exceptions does not show that any exceptions were taken to the instructions to the jury, nor to the submission of any of the questions stated, or to the refusal to submit any, and error cannot now be assigned in respect to these matters.

2. The verdict in this case is not a special verdict, in any proper sense of the term, but it is a general verdict, with answers to special questions submitted therewith. The question whether the verdict, if regarded as a special verdict under the statute, is not so defective that it would not support the judgment, occurred for consideration; but the verdict is a general one, with answers to certain questions submitted with what, in substance and effect, is a general verdict, finding all the issues for the plaintiff, under sec. 2858, S. & B. Ann. Stats. *Schatz v. Pfeil,* 56 Wis. 429; *Oliver v. Morawetz, ante,* p. 332. The court was not required by the statute to direct a special verdict when not so requested by either party; and the mere request by one party, as in the present case, that certain specific questions should be submitted as a special verdict, is not sufficient, as it was expressly held in *Fenelon v. Butts,* 53 Wis. 346, 352, that the court was not required by law to thus submit such questions. What questions should be submitted to the jury to answer in connection with a general verdict is a matter wholly within the discretion of the trial court; and within the decision in *Fenelon v. Butts, supra,* the verdict was clearly sufficient under the statute (sec. 2858, S. & B. Ann. Stats.), and concluded the entire issue.

It follows that the judgment of the circuit court is correct and must be affirmed.

*By the Court.*— The judgment of the circuit court is affirmed.