HOCKING, Appellant, vs. WINDSOR. SPRING COMPANY, Respondent.

*September 13—October 3, 1905.*

*Master and servant: Negligence: Personal injuries: Assumption of risk: Court and jury: Nonsuit: Evidence.*

1. A servant assumes the usual and ordinary risks of his employment; but before he can be held to have assumed an unusual or extraordinary risk he must know, or have reasonable means of knowing, the precise danger to which he is exposed and which he thus assumes, and a mere vague surmise of the possibility of danger is not sufficient to warrant the court in taking the case from the jury.

2. In such case, where there is doubt whether the servant assumed the risk, the question is for the jury.

3. In an action for personal injuries suffered by a servant, under the evidence, stated in the opinion, it is *held* that the defect causing the injury was not, as matter of law, open and obvious, or one which the servant knew, or by the exercise of ordinary care and prudence ought to have known.

4. In such case the assumption of the risk by the servant is *held* not to be so clearly proven as to warrant the court in nonsuiting the servant.

APPEAL from a judgment of the circuit court for Kenosha county: E. B. BELDEN, Circuit Judge. *Reversed.*

This is an action to recover damages for loss of an eye and other incidental personal injuries sustained by plaintiff while an employee of defendant. The negligence charged in the complaint is, in effect, that the machine furnished plaintiff in doing his work was not reasonably safe, in that the knife was allowed to become loose in its socket, and the set-screw used for holding the same was allowed to become threadworn and loose, not holding the knife true and firm in its proper place and position, and in allowing it to turn and strike the die on the side of the slot or hole; negligence in not setting the dies properly or squarely under the knife, but too close to one side, thereby causing the knife to loosen, turn, and strike the side of the die; negligence in the failure to instruct plaintiff in the operation of the machine, or the dangers thereof, or to warn him of the danger of splinters of steel flying if the knife struck the side of the die; negligence in failing to inspect the machine with sufficient frequency; and negligence in failing to employ a competent mechanic to set and adjust said die or knife, and in employing an incompetent man, who negligently set the knife and die in an unsafe and improper manner. Defendant answered denying the negligence alleged, and charged contributory negligence on the part of the plaintiff. On the trial the evidence offered by the plaintiff tended to show that at the time of the injury, September 14, 1901, plaintiff was engaged in defendant's factory in the operation of a machine known as a "punch press" or "punch machine," and in the cutting of bed-spring slats therewith. This machine consisted in part of a die, composed of two parts, made of hard tool steel, tempered, having a slot or hole in the center thereof of the shape or form desired to give the ends of the slats—the die being so set or fastened in its bed that into such slot or hole a close-fitting hard steel punch or knife is caused to descend in the operation of the

machine; the die about the hole being sharp for the purpose of cutting metal placed over the hole when the knife or punch descended into it. The punch or knife is held in position in a socket in the head of the machine by a set-screw, and is made to fit closely into the hole or slot in the die, and, being of the same size and shape, must be adjusted so as to descend and fit accurately into the slot. If the die and knife are not properly set it will throw splinters, and is liable to break the die bed or loosen the screws. The imperfect setting leaves a burr on the stock, which has a tendency to dull the punch, and break the die and punch, and is liable to turn the die around. The continual pounding will loosen the whole machine, and something will have to break. The bed slats manufactured by said machine are cut and the ends trimmed by placing them over the slot, and causing the punch or knife to descend into said slot by means of the machinery and power connected with the punch; the sharp edges of the die cutting the slats. In operating the machine it is necessary to keep the punch and die constantly oiled, and for this purpose the operator frequently oils the same while the machine is in motion, "in order to throw oil all over the punch and die." At the time of the injury plaintiff was oiling the machine, and the punch or knife struck the die in such manner as to break off from the edge thereof a small splinter of steel, which was thrown with great force into plaintiff's eye, causing the injury complained of. Plaintiff, when injured, was twenty-one years of age, a painter by trade, and had had no experience in the kind of work he was doing, except his experience while at defendant's factory. He ran a spring machine for defendant when first employed, about two years before the injury. The last time before the injury he worked on a crimper for two or three months, and the last week constantly on the machine in question, and occasionally during the preceding two or three months. He could not tell exactly how long he worked on the machine, maybe two or three weeks. He did not know, and

had never been told, that splinters of steel could or might be broken off and thrown by the machine, and received no instructions in regard to the running of the machine, or warning as to the possibility of splinters of steel being thrown from the die in case the punch should strike it. He had nothing to do with the setting of the die, had never set the machine, and had been instructed not to set it. He had no knowledge or information that the die was improperly set. About two days before the injury he discovered that the screw holding the punch or knife was loose, and tightened it with his fingers. He informed the foreman of the fact, who tightened the screw, and said it was all right, and directed plaintiff to go ahead and run the machine. The screw afterwards became loose, and plaintiff tightened it twice. Before the injury he also noticed that the machine was "chucking," but did not know at that time what it was, any more than it was a "chuck." About an hour before the injury he again complained to the foreman that the screw was "threadworn or loose," that the machine was not cutting good, it did not leave a nice, clean cut, but left a burr, and he knew the screw ought to be tight. The foreman tightened the screw, perhaps hammered it, cut a couple of slats, said it was all right, and again instructed plaintiff to go ahead and run the machine. Plaintiff, relying upon the assurance that the machine was all right, continued to operate it, and an hour later was injured. The screw and knife might become loose without indicating any danger of the knife or punch turning sufficiently to strike the die, for there was a "boss" on the shaft of the knife against which the screw set to hold it firmly in place. If the screw became sufficiently loose the knife would drop out. The knife could be worked in the stock with the set-screw loose. At the close of the plaintiff's evidence the court, on motion of defendant, granted a nonsuit, and from the judgment entered thereon the plaintiff appeals.

For the appellant there was a brief by *B. J. Wellman* and

*R. V. Baker,* attorneys, and *Norman L. Baker,* of counsel, and oral argument by *Mr. Wellman* and *Mr. Norman L. Baker.*

For the respondent there was a brief by *Vilas, Vilas, Jenner & Freeman,* and oral argument by *E. P. Vilas.*

KERWIN, J.  The duty of the master to furnish his servant with a reasonably safe working place, and reasonably safe tools and appliances with which to do his work and keep the same in repair, is elementary, and there was evidence that the machine which was being operated by the plaintiff at the time of the injury was defective, in that the punch did not descend squarely into the slot in the die, but struck or "sheared" upon the side of the die in such manner as to throw the splinter of steel which struck the plaintiff in the eye, producing the injury complained of.  The general rule is that the servant assumes the usual and ordinary risks of his employment; but before he can be held to have assumed an unusual or extraordinary risk he must know, or have reasonable means of knowing, the precise danger to which he is exposed and which he thus assumes, and a mere vague surmise of the possibility of danger is not sufficient to warrant the court in taking the case from the jury.  *Dorsey v. Phillips & C. C. Co.* 42 Wis. 583; *Nadau v. White River L. Co.* 76 Wis. 120, 43 N. W. 1135; *Naylor v. C. & N. W. R. Co.* 53 Wis. 661, 11 N. W. 24; *Kennedy v. Lake Superior T. & T. R. Co.* 93 Wis. 32, 66 N. W. 1137; *Curtis v. C. & N. W. R. Co.* 95 Wis. 460, 70 N. W. 665; *Haley v. Jump River L. Co.* 81 Wis. 412, 51 N. W. 321, 956; *Colf v. C., St. P., M. & O. R. Co.* 87 Wis. 273, 58 N. W. 408.  Of course, if plaintiff knew, or ought reasonably to have known, that splinters would fly when the die was improperly set, and still continued in the employment and use of the machine knowing it was not properly set, he might be held to have assumed the risk.  Where there is doubt whether the servant assumes the risk the question is for the jury.

*Rummell v. Dilworth, P. & Co.* 111 Pa. St. 343, 351, 2 Atl.
355, 363; *Revolinski v. Adams C. Co.* 118 Wis. 324, 95 N.
W. 122; *Grant v. Keystone L. Co.* 119 Wis. 229, 96 N. W.
535. It is quite clear from the evidence offered on the part
of the plaintiff that it was necessary the die should be prop-
erly set, in such manner as to cause the punch to descend
squarely into the slot and avoid striking upon the side, and
that such striking did break off and throw splinters of steel,.
and thereby exposed the operator to danger.

The main controversy, therefore, in this case is whether the
plaintiff assumed the risk. From the evidence adduced it
does not appear as a matter of law that this defect was an
open or obvious one, or one which the plaintiff knew, or by
the exercise of ordinary care and prudence ought to have
known. Even if plaintiff might have known that some dam-
age would result, such as the breaking of the punch in case it
was not properly set, it does not appear as matter of law that
he was charged with knowledge of, or by the exercise of ordi-
nary care and prudence could have known, the particular
peril to which he was exposed. As appears from the facts
stated, plaintiff was a painter and had had but little experi-
ence in the operation of machinery, and had no knowledge
that the improper setting of the die would cause splinters of
steel to fly, and was not warned of any danger in that regard,
but, on the contrary, was assured by the foreman 'that the ma-
chine was all right. It is true that if the defect was an open
and obvious one, as in *Showalter v. Fairbanks, M. & Co.* 88
Wis. 376, 60 N. W. 257, and of which the servant had equal
knowledge with the master, the former would not be justified
in relying upon the assurance of safety by the master. But
the case before us is far different. Here it cannot be said as.
matter of law that the defect was an open and obvious one, or
one which ordinarily would be appreciated by a man without
experience, warning, or technical knowledge upon the subject.
Upon these facts it cannot be said that assumption of risk on.

the part of the plaintiff was so clearly proven as to warrant the court in nonsuiting the plaintiff.    Indeed, it cannot be said as matter of law that plaintiff knew he was exposed to any danger in continuing to operate the machine.    It was examined, set, put in operation, and tried by the foreman and pronounced all right only an hour before the injury.    And even if he knew, or ought to have known, that the die might become loose, it does not follow that he was apprised of the particular danger to which he was exposed.    Upon the proof the case made was clearly for the jury, and the court erred in granting a nonsuit and ordering judgment for the defendant. *Naylor v. C. & N. W. R. Co.* 53 Wis. 661, 11 N. W. 24; *Kennedy v. Lake Superior T. & T. R. Co.* 93 Wis. 32, 66 N. W. 1137; *Luebke v. Berlin M. Works,* 88 Wis. 442, 60 N. W. 711; *Republic I. & S. Co. v. Ohler,* 161 Ind. 393, 68 N. E. 901; *Dorsey v. Phillips & C. C. Co.* 42 Wis. 583; *McDougall v. Ashland S. F. Co.* 97 Wis. 382, 73 N. W. 327; *Newhart v. St. P. C. R. Co.* 51 Minn. 42, 52 N. W. 983; *American D. Co. v. Thorne,* 122 Fed. 431, 58 C. C. A. 413; *Littlefield v. E. P. Allis Co.* 177 Mass. 151, 58 N. E. 692; *Yess v. Chicago R. Co.* 124 Wis. 406, 102 N. W. 932; 1 Shearman & Redfield, Negligence (5th ed.) § 186.

*By the Court.*—The judgment of the court below is reversed, and the cause remanded for a new trial.

