ROWLEY, Respondent, vs. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*March 10—March 31, 1908.*

*Railroads: Negligence: Question for jury: Special verdict: Special findings requested: Form and sufficiency of questions: Stations: Licensees: Measure of care: Instructions.*

1. In an action for damages caused by a truck running down an incline on defendant railway company's station platform, coming in contact with a passing train and being knocked against plaintiff, whether defendant's agent left the truck in such a position that the accident could not have happened was *held,* under the evidence, a question for the jury.

2. Whether a special verdict under sec. 2858, Stats. (Supp. 1906; Laws of 1903, ch. 390), be taken at the request of either party or directed by the court on its own motion, in either case it is a true special verdict and must consist of questions relating to controverted and material matters of fact put in issue by the pleadings, and should not be combined with a general verdict.

3. Under sec. 2858, Stats. (Supp. 1906; Laws of 1903, ch. 390), where no special verdict is requested by the parties or directed by the court, the court has power to submit to the jury any particular question or questions of fact in addition to their general verdict, and in such case it is a matter wholly within the discretion of the trial court to determine what questions of fact should be so submitted, and the failure to include in such special questions all the material issues of fact, even if requested by the parties, will not be ground of error.

4. In taking a special verdict, the form of the questions being largely in the discretion of the court, it is not error to reject questions in the particular form requested by parties, provided the court sufficiently covers them in questions of its own framing.

5. Where specific acts of negligence are charged by the complaint, denied by the answer, and litigated on the trial, a special verdict should contain specific questions covering these alleged acts, and the submission of a general question simply asking whether defendant was guilty of want of ordinary care which proximately caused the plaintiff's injury is not a compliance with the special-verdict statute, and will be error, at least

Rowley v. Chicago, M. & St. P. R. Co. 135 Wis. 208.

where, as in this case, the proper specific questions were re-
quested.

6. Where plaintiff charged defendant railroad company with negli-
gently placing a truck in an unsafe position on its station plat-
form, so that it rolled down an incline, came in contact with a
passing train, and was knocked against plaintiff, *held*, that the
trial court erred in not submitting in the special verdict some
appropriate questions as to whether defendant's employee left
the truck in a reasonably safe position, and, if he did not,
whether his failure so to do was a lack of ordinary care which
proximately caused the plaintiff's injury.

7. In an action for damages caused by a truck running down an in-
cline on defendant railway company's station platform, coming
in contact with a passing train and being knocked against
plaintiff, the basic act of negligence on which the plaintiff's
case was founded was the negligent placing of the truck. The
trial court in directing a special verdict submitted, among
others, a general question as to whether defendant was guilty
of any want of ordinary care which proximately caused plaint-
iff's injury, and refused defendant's request for specific ques-
tions relating to the conduct of its agent with reference to plac-
ing the truck in a dangerous position. The court also charged,
in connection with the general question, that if defendant's
agent used ordinary care in leaving the truck in a reasonably
safe position where it would remain of its own weight, then
defendant exercised ordinary care. *Held*, that the failure to
submit the basic question of fact was error which was not
cured by the instruction.

8. Where a railroad company has by long acquiescence licensed the
public to use its station grounds for ordinary travel, it owes a
greater degree of care to persons so using its grounds than to
ordinary licensees, and must conduct its business over such li-
censed way with the ordinary care required to avoid injuries
which may be anticipated under the circumstances, including
the fact of the licensed use of its grounds.

9. In an action for damages caused by a truck running down an in-
cline on defendant railway company's station platform, coming
in contact with a passing train and being knocked against
plaintiff, an instruction that it was defendant's duty to keep
a reasonably vigilant lookout to prevent injuries to licensees
using its platform was misleading, as the phrase "vigilant look-
out" is almost uniformly used in reference to the lookout to be
kept by train employees in the movement of trains, and that
question was not in issue here.

APPEAL from a judgment of the circuit court for Juneau county: J. J. FRUIT, Circuit Judge. *Reversed.*

This is an action to recover for personal injuries received by the plaintiff, a young woman twenty-three years of age, while walking upon the platform in front of defendant's station building at the village of Mather, Juneau county, Wisconsin, at about 8:30 p. m. May 10, 1906. The village has about 100 inhabitants, and the railroad passes through it in a northeasterly direction, but will be treated for convenience as running north and south. The village clusters about the station. There is one street, called Main street, crossing the railroad track at right angles just north of the station, and upon the north side of the street just east of the defendant's right of way Dewey's general store is situated, which is the principal store of the village and contains the postoffice. The station building stands on the right of way just south of Main street and on the east side of the defendant's main track, and is a wooden building thirty-six feet in length north and south by about twenty feet in width. Between the station building and the main track is a wooden platform about twelve feet in width, slightly sloping toward the track, which extends from the south line of Main street south for a distance of about sixty feet. A cinder platform of the same width extends south from the end of the plank platform along the main track for a distance of fifty-four feet, and from the end of the cinder platform a cinder path runs south 220 feet to the water tank. The north part of the station building is used as a freight house, and has a large door six feet in width for the reception of freight, opening on the platform. From the threshold of this door an inclined approach six feet in width runs down to the main platform, with a fall of eight inches in the six feet, so that the total fall from the door to the edge of the depot platform (a distance of twelve feet) is about ten inches, of which eight

inches is in the first six feet. This incline also slopes to the right and left from the sides of the door. The depot platform and the cinder platform constitute the only walk, which is in the nature of a regularly constructed sidewalk in the village. A number of houses and buildings of various kinds front on the right of way and depot grounds, and for many years the depot platform and cinder walks, as well as the depot grounds in general, have been·commonly used by the public in passing to these houses and buildings from Main street without objection by the defendant company.

On the evening of the accident the plaintiff, with a young man as an escort, was walking for pleasure, and came upon the north end of the depot platform and proceeded south the entire length of the wooden platform as well as the cinder platform and cinder path and then returned. As they were returning a freight train passed them going north, and as they were at a point upon the wooden platform just north of the large freight-house door a large two-wheeled baggage truck ran down the incline towards the train, was struck by the train and thrown against the plaintiff, hurling her violently against a stove which had arrived by freight and stood upon the platform near the northwest corner of the station building. There was no direct evidence tending to show in what manner the truck came to be in such a position that it would make this movement. No one was operating it at the time, and apparently it stood somewhere upon the incline and the jar of the passing train put it in motion.

The plaintiff in her complaint alleged two grounds of negligence: (1) Negligent operation of the train at an unreasonable rate of speed; and (2) negligent placing of the truck in a position so close to the track that it came in contact with the train. But there was no evidence to support the first ground of negligence charged, and the second ground was the only one litigated. A motion to direct a verdict in favor of

the plaintiff was overruled, and the court of its own motion submitted a special verdict to the jury, which with the answers is as follows:

"(1) On and prior to the 10th of May, 1906, were grown people and children in the village of Mather accustomed continuously and frequently to pass and repass on foot for a considerable time, without objection or with acquiescence on the part of the defendant railway company, over and across the plank platform in question from the northerly and southerly ends, respectively, of such platform along a path or way running and being near the easterly side of the company's railway track? *A.* Yes. (2) If you answer question No. 1 'Yes,' then for how many years immediately prior to May 10, 1906, had such footway travel across and on said plank platform and the path or way leading from the respective ends of such platform been continued? *A.* Twenty-one years. (3) If you answer question No. 1 'Yes,' then was the defendant railway guilty of any want of ordinary care which proximately caused the injury to the plaintiff? *A.* Yes. (4) If you answer question No. 3 'Yes,' then was such failure to exercise ordinary care on the part of the defendant the proximate cause of the plaintiff's injury? *A.* Yes. (5) If the court shall finally determine that the plaintiff is entitled to recover, at what sum do you assess her damages? *A.* $3,000."

A motion to set aside the verdict and for a new trial was granted, unless the plaintiff remitted the sum of $1,000 from the damages, which the plaintiff did, and judgment for $2,000 and costs was rendered, from which defendant appeals.

For the appellant there was a brief by *Charles E. Vroman* and *Veeder & Veeder,* and oral argument by *Mr. Vroman.*

*J. T. Dithmar,* for the respondent.

Winslow, C. J.    1. The first contention made is that a verdict for defendant should have been directed because the proof was undisputed that the truck was left by its employee in a perfectly safe position.    The defendant had but one em-

ployee at the station, one De Long, who combined the functions of freight and passenger agent and baggage master. He testified that about half an hour before the accident he had taken the truck into the freight house and unloaded therefrom three or four sacks of oats, and had then brought it out and put it between the stove standing on the platform and the west side of the freight house, just north of the door. In this position it could not have rolled down the platform, because it would first have to move to the south and up the incline, which would be impossible. De Long further says that he then went into the office of the depot and remained there continuously until the accident happened, and that he authorized no one to touch it. Three young men named Parker, Griffin, and Caylor came over to the platform from Dewey's store about five minutes before the train came in and walked south down the platform. Parker testified that as he passed the depot he noticed the truck behind the stove in the place where De Long testifies he put it. On the other hand, Griffin testified that he noticed the truck standing in front of the big door pointing towards the main track, and just about far enough from the track so that a person could walk nicely between the handles and the edge of the platform. Caylor testified that he saw no truck; that there was no truck in the path pointing towards the track nor between the stove and the track. One Nichols testified that he was walking up the track from the south, that the train passed him, and, when he was about fifty feet from the south end of the depot, he saw the truck start out from the depot and run straight out towards the train, and that it either struck the girl or the train. The plaintiff and her escort (one Strait) both testified that they saw no truck, but as they walked back and had just passed the freight-house door they heard a noise, and the truck came running down the incline, struck the train, and then struck the plaintiff from behind, throwing her against the stove. This is substan-

tially all of the evidence concerning the manner in which the accident happened. Parker testified, further, that two boys were running and playing about the stove when he passed, but there was no evidence that they did anything to the truck. The situation of the evidence must be conceded to be unsatisfactory, but certain physical facts are undisputed. The truck did run down the incline and strike the train. It could not have done so unaided if left behind the stove. No one was seen to move it. De Long was the last person shown to have touched it. In view of these admitted facts and in view of Griffin's positive testimony that the truck stood in front of the door and pointed toward the train as he passed, we think the question whether De Long left it there was fairly a question for the jury notwithstanding his statement that he left it behind the stove.

2. After the court announced, at the conclusion of the evidence, that a special verdict would be submitted to the jury, the defendant requested the submission to the jury of two questions as a part of the special verdict. The first of these questions asked whether the truck was placed by De Long in a reasonably secure position so that it could not of its own volition run down the incline and collide with the train; and the second asked whether De Long in the exercise of ordinary care placed and left the truck in a reasonably safe position. The court refused to incorporate either question in the verdict, deeming the matter fully covered by the third question, and this ruling is assigned as error. Neither party requested the submission of a special verdict, but the court in the exercise of its discretion directed one to be taken. It will be seen by examination of the first clause of sec. 2858, Stats. (1898), as amended by sec. 1, ch. 390, Laws of 1903, that special verdicts are to be rendered in two contingencies: First, when requested by either party before he introduces any testimony; and, second, when the court in its discretion directs such a verdict. In either case the ver-

dict is a true special verdict and must consist of questions relating to controverted and material questions of fact put in issue by the pleadings, and should not be combined with a general verdict. *Ward v. C., M. & St. P. R. Co.* 102 Wis. 215, 78 N. W. 442; *Baxter v. C. & N. W. R. Co.* 104 Wis. 307, 80 N. W. 644; *Schaidler v. C. & N. W. R. Co.* 102 Wis. 564, 78 N. W. 732; *Sladky v. Marinette L. Co.* 107 Wis. 250, 83 N. W. 514; *Mauch v. Hartford,* 112 Wis. 40, 87 N. W. 816; *Cullen v. Hanisch,* 114 Wis. 24, 89 N. W. 900. It will also be seen by reference to the third clause of said sec. 2858 that, where no special verdict is requested by the parties or directed by the court, the court has the power to submit to the jury any particular question or questions of fact in addition to their general verdict, and in such case it is a matter wholly within the discretion of the trial court to determine what questions of fact should be so submitted, and the failure to include in such special questions all the material issues of fact, even if requested by the parties, will not be ground of error. *McDougall v. Ashland S. F. Co.* 97 Wis. 382, 73 N. W. 327; *Carroll v. C., B. & N. R. Co.* 99 Wis. 399, 75 N. W. 176.

In this case the court directed a *special verdict,* not findings of fact in connection with a general verdict; and hence the rule that the questions submitted must relate to and cover the controverted and material issues of fact made by the pleadings applies with the same force as though one of the parties had in due time requested a special verdict. When the court announced its purpose to take a special verdict the defendant's counsel submitted to the court, as he properly might, two questions which in his opinion related to material issues of fact in the case and were proper to be included in the special verdict. Conceding that the questions did cover such material issues, it would not be error to refuse them in the form requested provided the court sufficiently covered them in questions of its own framing; for, as has

been frequently said, the form of the questions is largely in the discretion of the court. Now, the basic and fundamental act of negligence on which the plaintiff's case was founded, and which was denied by the answer, was the negligent placing of the truck by defendant's employee on the station platform in such a position that the passing train struck it and hurled it against the plaintiff. The questions submitted by the defendant plainly called attention to this basic issue of fact, but the court submitted, instead thereof, simply the general question whether the defendant was guilty of *any* want of ordinary care which proximately caused the plaintiff's injury. This general question was, of course, one of the ultimate questions of combined fact and law upon which the case depended. It covered the question whether De Long negligently left the truck on the incline, but it covered it in much the same way that a general verdict would cover it. It is true that the court charged in substance, in connection with the third question, that if the jury believed that De Long in the exercise of ordinary care left the truck in a reasonably safe position where it would remain of its own weight, then the defendant exercised ordinary care; and it is claimed that by the giving of this instruction the error, if error there was, in refusing to submit the basic question of fact, was cured or became nonprejudicial.

This court has several times held that where specific acts of negligence are charged by the complaint, denied by the answer, and litigated on the trial, a special verdict should contain specific questions covering these alleged acts, and that the submission of a general question simply asking whether the defendant was guilty of want of ordinary care which proximately caused the plaintiff's injury is not a compliance with the special-verdict statute and will be error, at least where the proper specific questions are requested. *Lee v. C., St. P., M. & O. R. Co.* 101 Wis. 352, 77 N. W. 714; *Bigelow v. Danielson,* 102 Wis. 470, 78 N. W. 599;

Schrunk v. St. Joseph, 120 Wis. 223, 97 N. W. 946; Olwell v. Skobis, 126 Wis. 308, 105 N. W. 777. The reason is quite plain. The statute contemplates the right of the party to a separate finding of the jury upon each such specific question of fact. It is the duty of the court to administer the statute so that the result aimed at be attained. If the court may refuse to submit such specific questions and simply submit the general question of negligence, then the statute is practically eliminated from the statute book, and in every negligence case two or three general questions covering simply ultimate conclusions of fact and law, and amounting to but little more than a general verdict, will take the place of the findings of specific fact contemplated by the statute. We hold, therefore, in this case that the court erred in not submitting some appropriate questions calling upon the jury to determine whether De Long left the truck in a reasonably safe position upon the platform, and, if he did not, whether his failure so to do was a lack of ordinary care which proximately caused the plaintiff's injury.

3. In submitting the third question the court charged the jury that, if they answered the first question "Yes," then they were to consider the third question; that the care required of the defendant under the circumstances was simply ordinary care; but that it was the duty of the defendant to exercise increased prudence and caution in operating its railroad at and in front of the depot and to keep a reasonably vigilant lookout to prevent injury or accident to a licensee such as the plaintiff while crossing over the platform. The giving of this instruction is assigned as error, and it is said that the jury were told by it that the defendant owed the plaintiff the duty of exercising more than ordinary care in the conduct of its business in case it had licensed the public to use the platform for a walk. The court followed this instruction by this sentence: "However, the duty required by the defendant to the plaintiff, if you have answered question

1 'Yes,' is that of ordinary care under all the circumstances of the situation,"—and gave further instructions tending to emphasize the idea that ordinary care was the only degree' of care required. Whether the instruction should be held erroneous on this ground in view of the frequent statement that ordinary care alone is required may be doubtful, but we are clearly of the opinion that it was erroneous on other grounds. All persons who go upon a railroad platform upon business, such as the taking of a train, the meeting or accompanying of a friend who is expected to come upon or take a train, as well as the transaction of freight business, are regarded as invited to use the platform, and as to all such persons the duty of the company is to construct and maintain its platform so that it shall be reasonably safe both as to access, use, and departure from it. A mere licensee, however (and in this case there is no claim that the plaintiff was more than a mere licensee), must take the platform as he finds it. He enjoys his license subject to the perils that may be there, and the company owes him no greater duty than to refrain from active or intentional wrong. *Dowd v. C., M. & St. P. R. Co.* 84 Wis. 105, 54 N. W. 24. But it is equally well established in this state that, where a railroad company has by long acquiescence licensed the public to use its station grounds for ordinary travel and passage to and fro, the company must conduct its business over such licensed ways with ordinary care to prevent injury to such licensees, and that the rules of ordinary care in such cases require a greater measure of vigilance than would be required at a place where no such license had been given. *Townley v. C., M. & St. P. R. Co.* 53 Wis. 626, 11 N. W. 55; *Mason v. C., St. P., M. & O. R. Co.* 89 Wis. 151, 61 N. W. 300. Ordinary care in such cases will be that degree of care which is reasonably adequate to meet and avoid the dangers which ought to be anticipated under all the circumstances, including the fact of the licensed use. *Carmer v. C., St. P., M. & O. R. Co.*

95 Wis. 513, 70 N. W. 560. So, while the licensee must take the licensed grounds or platforms as he finds them and cannot predicate negligence upon defects therein, he is entitled to expect that defendant will exercise ordinary care in view of all the circumstances in the operation of its business at and about the licensed ways. While most, if not all, of the cases involving the rights of licensees under such circumstances have been cases where the licensee was injured by the alleged negligent movement of cars or engines, no good reason is perceived why the same rule of ordinary care should not logically apply to the alleged negligent operation of a freight or baggage truck upon the licensed ground or platform, as the movement of the truck for railway purposes is equally a part of the operation of the railroad business. Thus in the present case it would be entirely proper to say that the defendant's employees were required to use ordinary care in operating and placing the truck upon the platform in case the platform had become a licensed way, and that the measure of ordinary care would be greater than it would be had no license been given, and would be such as would be reasonably adequate to meet and avoid the dangers which ought to be anticipated in view of the licensed use.

Had this been the fair import of the charge as given, we should find no serious difficulty with it, but the sentence objected to requires the defendant to keep a reasonably vigilant lookout to prevent injury or accident to a licensee. The words "vigilant lookout" are almost universally used in reference to the lookout to be kept by train employees in the movement of a train, and we think would naturally be so understood by the jury. In the present case the claim that there was negligence in the movement of the train had been abandoned, and the only claim in fact litigated was the claim of negligence in the placing of the truck. In this respect, therefore, we think the instruction was well calculated to mislead the jury by leading them to believe that they might

consider whether a sufficient lookout was kept by the employees of the freight train, when in fact no such element could properly enter into their deliberations.

*By the Court.*—Judgment reversed and action remanded for a new trial.