LAUGHY, Respondent, vs. BIRD & WELLS LUMBER COMPANY,
Appellant.

*September 8—September 29, 1908.*

*Master and servant: Assumption of risk: Knowledge of defects: Rail-
road brakeman: Defective track: Negligence in making flying
switch: Questions for jury.*

1. An employee who has as good an opportunity as his employer
   to know of defects or dangerous conditions attending his work
   assumes the risk thereof if he voluntarily and without protest
   continues in the employment.
2. But defects which are discoverable by the exercise of such care
   as is required of the employer are not necessarily discoverable
   by such attention to his surroundings as an employee is bound
   to give.
3. The employee is only required to see and comprehend those de-
   fects or imperfections which would ordinarily attract the at-
   tention of a person under the same or similar circumstances,
   in the exercise of ordinary care.
4. Whether an employee in any particular instance is chargeable
   with knowledge of conditions imperiling his personal safety is
   generally, though not always, a question for the jury.
5. A railroad brakeman engaged in switching cars was not bound
   to search or look specially for defects in the track and roadbed
   likely to cause injury, in the absence of circumstances reason-
   ably suggesting the existence of such defects.
6. In an action for injuries to a brakeman while making a flying
   switch, resulting from the derailment of an engine tender by
   reason of the defective condition of the track and roadbed at a
   curve, one of the defects being the insufficient elevation of the
   outer rail, it is *held* upon the evidence that the question as to
   assumption of the risk was one for the jury.
7. Whether, in such a case, if the brakeman was not chargeable
   with knowledge of the dangerous condition of the track and
   roadbed, he was negligent in causing the flying switch to be
   made as it was, was also, upon the evidence, a question for the
   jury.

APPEAL from a judgment of the circuit court for Manito-
woc county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

Action to recover for personal injuries.

October 28, 1905, defendant was operating a logging rail-

road and plaintiff, an experienced railroad man, was in its employ as brakeman. While he was engaged in the regular course of his duties aiding and directing in making a "drop" or "flying" switch at a point where there was a down grade toward the switch and a six-degree curve in the track, he was injured by breaking his ankle, permanently crippling him to some extent. In order to make the switch the engineer under plaintiff's direction pushed the string of cars, consisting of a box car next to the engine and a number of logging cars, back up grade beyond the switch till signaled by plaintiff to stop, and then upon signal he gave them motion down the grade at the rate of some four miles per hour and till signaled to give slack so plaintiff could cut off the logging cars. After the cut-off occurred the engine tender and box car were caused to go down the grade with sufficient speed to pass the point of the switch before the cars reached it, allowing them to pass in on the side-track. As the engine rounded onto the curve the tender left the track. Plaintiff, observing that the car upon which he was riding would inevitably be wrecked, jumped off with the result complained of.

The negligence alleged was that the roadbed where the tender left the track was rough, unsettled, and improperly graded and leveled; that there was an insufficient number of ties to fasten and hold the rails; that the rails were light and negligently fastened to the ties and to each other; and that the track was not ballasted, so that the ties rested lightly upon the roadbed, in the whole making an insecure and dangerous roadbed and track which caused the derailment and consequences. There was evidence tending to establish the affirmative of the question submitted to the jury covering the subject of defendant's negligence, which was as follows:

"Considering the state of the roadbed, the weight and size of the rails, the size and number of the ties supporting each rail, the fastenings of the rails to each other, and to the ties,

the amount of ballast between the ties, the degree of the curve in the track, and the elevation of the outside rail of the track on the curve, at the time and place of the derailment shown by the evidence, was the condition of defendant's railroad then and there so defective that it was not reasonably safe for the use then being made thereof for the work in which plaintiff was then engaged?"

The jury answered in the affirmative and found in plaintiff's favor on other questions, in the whole establishing his right to recover. The damages were fixed at $3,500. Judgment was rendered accordingly, exceptions being saved to present the questions referred to in the opinion.

For the appellant there was a brief by *J. C. Morgan* and *Eastman & Martineau,* and oral argument by *E. C. Eastman.* As to plaintiff's assumption of the risk they cited *Schmitt v. Hamilton Mfg. Co.* 135 Wis. 117, 115 N. W. 353, and cases cited; *Naylor v. C. & N. W. R. Co.* 53 Wis. 661, 664; *Faber v. C. Reiss C. Co.* 124 Wis. 554, 560; *Writt v. Girard L. Co.* 91 Wis. 496, 499; *Clark v. St. P. & S. C. R. Co.* 28 Minn. 138, 2 Am. & Eng. R. Cas. 240, and cases cited on p. 242; *Portance v. Lehigh Valley C. Co.* 101 Wis. 574, 581; *Kelly v. Abbot,* 63 Wis. 307, 309; *Evansville & R. R. Co. v. Barnes,* 137 Ind. 306, 36 N. E. 1092; *McMillan v. Spider Lake S. M. & L. Co.* 115 Wis. 332, 335; *Wood v. Locke,* 147 Mass. 604, 18 N. E. 578; *Clark v. Mo. Pac. R. Co.* 48 Mo. 654, 29 Pac. 1138; *Chicago & N. W. R. Co. v. Donahue,* 75 Ill. 106; *Mich. Cent. R. Co. v. Austin,* 40 Mich. 247, 250; *Ragon v. T., A. A. & N. M. R. Co.* 97 Mich. 265; *Hewitt v. F. & P. M. R. Co.* 67 Mich. 61, 66; *Rysdorp v. George Pankratz L. Co.* 95 Wis. 622, 626; *Watts v. Hart,* 7 Wash. 178, 34 Pac. 423, 425; *Atlas E. Works v. Randall,* 100 Ind. 293; *Peterson v. Sherry L. Co.* 90 Wis. 83, 62 N. W. 948; *Wormell v. Me. Cent. R. Co.* 79 Me. 397, 31 Am. & Eng. R. Cas. 272, 278; *Wilson v. W. & St. P. R. Co.* 37 Minn. 326, 33 N. W. 908; *Coombs v. Fitchburg R. Co.* 156 Mass. 200; *Monte v. Wausau P. M. Co.* 132 Wis.

205, 211, 111 N. W. 1114, 1116; *Corrigan v. West Div. S. Co.* 133 Wis. 77, 113 N. W. 441; *Demko v. Carbon Hill C. Co.* 136 Fed. 162, 69 C. C. A. 74; *Pennsylvania Co. v. Ebaugh,* 152 Ind. 531, 14 Am. & Eng. R. Cas. N. s. 701, 705; *Evansville & R. R. Co. v. Henderson,* 134 Ind. 636, 33 N. E. 1021, 1022; *O'Neal v. C. & I. C. Co.* 132 Ind. 110, 31 N. E. 669.

*L. M. Evert,* attorney, and *P. H. Martin,* of counsel, for the respondent.

Marshall, J. No contention is made but that the jury were warranted in finding that appellant's track and roadbed were defective, causing the derailment of the engine tender and consequent necessity, under the circumstances, for respondent to jump from the moving car, and no substantial controversy as to the law governing the case.

That respondent had a right to assume the situation was reasonably safe for the performance of the operation in which he was engaged when injured, unless he knew to the contrary or would have known thereof had he exercised ordinary care to observe the imperfections, and that such care required him to notice and comprehend those things affecting his personal safety which were so open and obvious as to naturally attract the attention of a person so circumstanced in case of his paying ordinary heed to his surroundings, and if under that rule he knew or ought to have known of the defects he must be regarded, since he voluntarily and without protest pursued his employment, to have assumed the risk of the imperfections, is insisted upon on the one side and conceded, as the fact is, upon the other. The law to that effect is very familiar. We are called upon to apply it to a great variety of situations, no two being precisely alike or sufficiently so as to make one such application develop a principle necessarily governing the other, at substantially every meeting here for the decision of cases.

Many expressions in decided cases exist which are often, and are now, referred to as applicable to facts materially different from those in mind at the time they originated; a much broader meaning being ascribed thereto than was intended or can fairly be done. We often see the one used, seemingly now supposed to have controlling significance, that if the employee has as good or better opportunity to know of the defects as the master he assumes the risk. That is good law, but it does not suggest that defects which are discoverable by the exercise of such care as is required to be exercised by the master are necessarily discoverable by such attention to his surroundings as an employee is bound to exercise. Defects may be such as to be perfectly plain to the former and not attract the attention of the latter, since no duty of inspection rests with the servant; to turn aside from the acts of operating in order to specially look or search for defects, in the absence of some circumstance reasonably efficient to suggest existence thereof. The employee is only required to see and comprehend those imperfections which are so significant as to ordinarily attract the attention of a person under the same or similar circumstances, in the exercise of ordinary care, and whether the servant in any particular instance is chargeable with knowledge of conditions imperiling his personal safety is, generally, though of course not always, a jury question.

The foregoing need not be emphasized by the citation of authorities. Moreover it renders unnecessary any detailed consideration of the cases pressed upon our attention. It is sufficient to say in regard thereto that the facts now presented are so different from those in any one of such cases as to preclude the same from being regarded as controlling.

It is the opinion of the court that the evidence does not conclusively show that all of the imperfections which in the whole constituted the dangerous condition found by the jury were of that open, obvious nature which respondent, while

engaged in his work, would necessarily have seen had he exercised ordinary care, and the evidence on his part is to the effect that he in fact did not observe them.    It must be said, and is, substantially at least, conceded that there was evidence tending to show the existence of each of the found elements of the dangerous condition.    One thereof is the insufficient elevation of the outer rail at the curve.    It may well be, we are safe in saying, that such element would not, or might not, attract the attention of a trainman of experience in the exercise of ordinary care while engaged as respondent was before the accident, whatever might be his grade of service.    That of itself was sufficient to warrant submitting the question of assumption of risk to the jury, even if some other of the detail imperfections was, or should have been, known to respondent.    This conclusion necessarily disposes of the claim that such assumption appears from the evidence as a matter of law, which claim is the principal one relied upon for a reversal, and we will, therefore, not further pursue the subject.

The only other contention made is that the evidence establishes contributory negligence as matter of law.    That is largely, if not efficiently, met by the conclusion that the question of assumption of risk was properly submitted to the jury, and the refusal to disturb the finding was not error. There is ample evidence tending to show that, if respondent be not chargeable with knowledge of the dangerous condition of the track and roadbed, he was not guilty of want of ordinary care in causing the engine and cars to move as they did. The first conclusion leaves no escape which we can see from the second.

It is true the evidence shows that respondent might, by the use of the brakes, have held the string of cars to be switched after they were pushed up the grade to the proper point, till the engine had backed clear of the point of the switch, and then let them run down the grade by their own

momentum, rendering it unnecessary for the engine to move toward and onto the curve at the great speed which probably rendered operative the dangerous condition of the track and roadbed and cause the derailment.   But there is other evidence tending to show that if the cars had been so held they would not thereafter have attained a sufficient speed by the mere force of gravity to pass fully in on the switch track and, therefore, in order to render the operation of making the drop switch successful, it was reasonably necessary, after the cars were pushed up the grade, to give them return mo-tion at the rate of some four miles per hour, more or less, as was done, which motion combined with the grade gave them such speed as to render it necessary for the engine to pass over the curve at a high rate of speed, in order to clear the point of the switch before they reached the same.   So there was evidence tending to show that the whole operation which was directed by respondent was not inconsistent with ordinary care in the absence of knowledge on his part, actual or constructive, that the track and roadbed were unsuitable therefor.

The result of the foregoing is that the judgment appealed from must be affirmed.

*By the Court.*—So ordered.