HANSON, Appellant, vs. SUPERIOR MANUFACTURING COMPANY, Respondent.

*October 21—November 10, 1908.*

*Master and servant: Negligence: Injury to servant: Defective machinery: Duty to warn servant of danger.*

1. The dumping apparatus in plain sight on the outside of a small car in which stone was pushed and pulled by workmen on a tramway in defendant's factory yard was not defective, so as to render defendant liable for an injury to one of the workmen, merely because it was so constructed that when the car was dumped a cross-arm at the end thereof descended so near to the planking of the tramway that a person's foot, if under it, would be injured, where in the ordinary and usual operation of the car the feet of the workmen would not be anywhere near the cross-arm.

2. A workman whose foot was crushed between the cross-arm and the planking had worked twenty-three hours on the tramway with similar cars about a year before the injury and had then observed that the cross-arm descended so near the planking that if one's foot were caught between them there would be danger of serious injury. *Held*, that defendant was not negligent in failing to warn him of the danger when he again went to work on the tramway about three hours before the accident.

3. The facts that the car causing the injury was a new one, the cross-arm of which descended somewhat lower than did those on the cars with which plaintiff had previously worked, and that he supposed that he was working with a car of the same pattern, were immaterial, since he was bound to anticipate the possibility of injury while working with the old cars.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Affirmed.*

This is an action to recover for personal injuries received by the plaintiff while in defendant's employ as a common laborer June 5, 1907. On and prior to said date the defendant owned and operated a factory and yard for the manufacture of cement and lime at Superior, which was located on the bay, so that vessels could and did discharge cargoes of stone into the yard. A frame tramway about twenty feet in

height and four feet in width extended from the dock back into the yard, with a plank surface upon which was a narrow-gauge railway track three feet in width.     Upon this track several small dump cars were operated.     These cars were filled with stone by machinery from vessels at the dock, and were then pushed and pulled by the employees out into the yard and dumped into the yard beneath.     The cars are about three and one-half feet in height from the top of the rail, and wide enough so that the sides project over the sides of the tramway structure.     They have a floor in the shape of an inverted V, and have doors opening horizontally on each side and which swing on hinges at the top.     These doors are opened by means of a lever and a dumping apparatus which is operated by the workman at the rear when the car reaches the proper place.     This apparatus consists of a shaft running straight through the car lengthwise under the floor, which shaft is connected by rods at each end of and on the outside of the car with the lower parts of the swinging doors. As the workman at the rear of the car lifts the lever, an iron cross-arm turns from a horizontal to a vertical position at each end, and the rods attached to the doors push the doors outward, thus opening them and allowing the contents of the car to run out on each side.     When the load is dumped the operation is reversed, and the cross-arm again assumes a horizontal position and automatically locks the doors shut. The cars are usually dumped while moving.     One man pulls the car in front by means of a rope, and another man pushes behind and operates the dumping apparatus at the proper place.

The plaintiff had been employed by the defendant as a common laborer about the yard and in the boats for more than a year, and had worked twenty-three hours on the tramway about a year before the accident.     On the morning of the accident he was sent to work on the tramway without instructions.     He had been at work three hours, and was en-

gaged in pulling a car out into the yard at the time of the accident, while a fellow-workman pushed the car and operated the dumping apparatus. Another car had preceded the plaintiff's car, and was stopped and dumped at a little distance from the end of the tramway. As the plaintiff's car approached this car, the plaintiff, fearing, as he claimed, that his car would run into the forward car, turned around and attempted to stop his car by bracing himself and pushing against it. At the same time his fellow-workman dumped the car and the cross-arm descended and caught the middle of the plaintiff's foot between the end of the cross-arm and the planking of the tramway and crushed it. The plaintiff claimed negligence in so constructing the dumping apparatus that the cross-arm descended to a point so close to the planking as to crush the foot if it happened to be under it, and in not warning him of this fact.

The jury returned a general verdict for the plaintiff assessing his damages at $700, and also found in reply to special questions submitted by the trial court that (1) the defendant was chargeable with want of ordinary care in permitting conditions to be such that the cross-arm came as near the planking as it did; and (2) in not apprising the plaintiff of defects and dangers that he should not be held bound to discover; and (3) that the car was a new car. Upon motion the court set aside the jury's answers to the special questions and granted judgment for the defendant notwithstanding the verdict, and the plaintiff appeals.

*W. P. Crawford,* for the appellant.

For the respondent there was a brief by *Ross & Dwyer,* and oral argument by *F. A. Ross.*

WINSLOW, C. J. There was clearly no negligence in the manner of construction of the car. The dumping apparatus operated perfectly, and could not be said to be defective merely because the cross-arm descended to a point close to

the planking. In the ordinary and usual operation of the car the feet of the workmen would not be anywhere near the cross-arm, for the forward workman would be some distance ahead pulling on the rope and the car would stop itself when dumped, while the rear workman would be pushing on the top of the car from behind and his feet would inevitably be at some distance from the car; so it is difficult to see how an employer could reasonably apprehend that the foot of either workman could naturally get in such a position as to be caught under the cross-arm.

But if it should be held that there ought to be reasonable apprehension of such a contingency, this fact would not make the apparatus defective, but would only to tend to prove that there was a danger not readily observable of which an inexperienced employee should be warned in advance. As matter of fact, the dumping apparatus was in plain sight on the outside of the car, and the fact that the cross-arm descended very close to the planking was readily observable at every operation during the three hours the plaintiff had been at work. But it is argued that it cannot reasonably be held as matter of law that a new employee was bound to observe the danger during the three hours that plaintiff had worked on the car on the morning of the accident. This argument would be of weight had this been the first experience which the plaintiff had with the cars and had he testified that he had not noticed the danger; but it appears by his own testimony that he has really foreclosed himself from making this claim. The plaintiff testified that he worked upon the cars in the same capacity for twenty-three hours about a year before his injury; that he observed at that time that the trip or arm descended to within about two inches or two and one-half or three inches from the plank, so that if a man's foot got under the trip it would just about clear it; that the planking on the top of the tramway structure was not exactly level, but some planks might be three fourths of an inch higher than oth-

ers; and that when the cross-arm caught his foot it came within three fourths of an inch to an inch from the track. Thus he made it certain that he had observed the mechanism, that he knew there was only a space of about two inches left when the cross-arm descended, and that he knew the planking was uneven so that in some places the space would be three fourths of an inch less. It follows necessarily that he knew that in some places the space left would be only somewhere about an inch and one-fourth or an inch and one-half. It goes without saying that if the foot were caught in that space at about the middle there would be danger of serious injury, though probably not as much injury as the plaintiff in fact received, and, as it is only necessary that the employee should know and appreciate that there is serious danger and not the precise extent of the danger, it must be held that under the plaintiff's own testimony there was no duty to warn him of the possible danger when he was set at work.

It is true that the plaintiff testified that the car on which he worked was a new car, that the cross-arm descended somewhat lower than did the cross-arms of the cars on which he worked the year before, and that he supposed at the time that he was working on a car of the same pattern as those on which he previously worked. As it appears, however, that he was bound to anticipate the possibility of injury while working on the old cars, these facts become immaterial. The conclusion of the trial court seems to have been justified by the law and the facts.

*By the Court.*—Judgment affirmed.