Dodge, Appellant, vs. Kaufman and others, Respondents.

*January 11—January 28, 1913.*

*Master and servant: Dangerous working place: Assumption of risk.*

1. Where the dangers of a servant's working place are open and obvious to and appreciated by him, he assumes the risk thereof by continuing in the employment without objection.
2. Assumption of risk and absence of contributory negligence may co-exist.
3. Before a servant "can be held to have assumed an unusual or extraordinary risk he must know or have reasonable means of knowing the *precise danger* to which he is exposed and which he thus assumes;" but it is not essential that the *precise injury* or the *precise manner* in which it might be inflicted should have been known or foreseen.
4. The mere fact that the danger or chance of a servant being injured in a particular manner was slight will not prevent his being held to have assumed the risk, if the danger, such as it was, was plain and obvious and well known by him.
5. Plaintiff, an experienced teamster, drove a dump-cart into a driveway under defendants' sawmill to remove the refuse from a dump-box which extended downward from the ceiling to within about three inches of the top of the dump-cart. It was necessary for him, when sitting on the seat of the cart, to lower his head slightly to avoid striking the dump-box as he drove under it, and also to avoid striking a shaft which crossed above the driveway. As he neared the dump-box the horses became frightened by machinery which projected into the drive-. way, and started to run, whereupon he drove away without emptying the box. Returning in about half an hour he entered the driveway from the other side in order to keep the off

horse farther from the machinery, but the horses again became scared, and while he was trying to control them his head struck the dump-box, injuring him severely. The horses, which belonged to defendants, were well broken and gentle, and plaintiff had used them twice each day for several months in doing this work. The driveway was well lighted, and plaintiff was familiar with the whole situation. *Held*, that he knew and appreciated each separate element that went to make up the risk, and hence assumed such risk, although he may not have known or anticipated the particular way in which such elements would combine to produce the injury.

APPEAL from a judgment of the circuit court for Langlade county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

Plaintiff brought this action to recover damages for personal injuries sustained on the 27th day of February, 1911, while he was working about defendants' sawmill. He was then forty-two years old and was engaged in hauling away lath-waste and other refuse. On the day of the injury he drove a dump-cart drawn by two horses into a driveway underneath the sawmill to empty into the cart the refuse of a dump-box which was built into and extended from the ceiling of the driveway. This driveway was twenty-five feet long, ten feet and one and one-half inches wide, and ran east and west. The height of the dump-box from the floor was six feet seven inches, and from the ceiling to the bottom of the dump-box the distance was five feet and one and one-half inches. The dump-cart was six feet eleven inches wide and six feet four inches high. In driving under the dump-box it was necessary for plaintiff to slightly lower his head when sitting on the seat of the dump-cart to avoid striking it. At the west side of the dump-box and on the north side of the driveway, six feet ten inches above the floor, was a conveyor, consisting of a metal chain running on sprockets with side cross-pieces upon it. The end of the conveyor projected out into the center of the driveway and within about twenty-two inches from the dump-box. On the east side of the dump-box, and within two feet thereof, was a shaft extending across the driveway about six and one-half feet above the

floor thereof.  It was also necessary for plaintiff, when sitting on the seat of his cart, to lower his head while driving under the shaft.  The plaintiff testified that on the day in question he drove into this driveway from the east with his dump-cart to empty the dump-box; that as he neared the box his horses became frightened because of the movement of the conveyor and started to run; so he drove away and did not empty it.  About half an hour later, and after emptying other boxes, he returned and entered the driveway from the west.  His horses, however, again became scared, and jumped, as they approached the box.  While he attempted to control them and to watch the position of his cart, his head struck the dump-box and he received the injuries for which damages are claimed.  The horses did not run, but remained standing in the passageway after plaintiff was hurt.  The proof also shows that plaintiff had driven this team of horses for a period of seven months, and for three months immediately prior to the beginning of this action made continued use of them in emptying the dump-box twice a day; that they were quiet, well broken, and gentle, and had never shied or escaped from control while defendants owned them; that plaintiff knew and was familiar with the location of the shaft, conveyor, and dump-box, and that the driveway was well lighted.

The case was tried before the court and a jury.  At the close of the testimony the court directed a verdict in favor of the defendants and against the plaintiff.  From a judgment entered on such verdict, dismissing the action with costs, the plaintiff appealed.

For the appellant there were briefs by *Brown, Pradt & Genrich,* and oral argument by *L. A. Pradt.*

For the respondents there was a brief by *Lawrence A. Olwell* and *Burr J. Scott,* and oral argument by *Mr. Scott.*

VINJE, J.  A considerable portion of the briefs of both parties is devoted to a discussion of defendants' negligence in

failing to furnish plaintiff a safe place in which to work, and of plaintiff's contributory negligence.    In the view of the case taken by the court these questions become immaterial.    It may be added, in passing, that were the question of plaintiff's contributory negligence material it would be for the jury. We shall assume, however, that a safe place was not furnished and that plaintiff was free from contributory negligence, and dispose of the case on the question of the assumption of risk. That assumption of risk and absence of contributory negligence may co-exist is expressly decided in *Campshure v. Standard Mfg. Co.* 137 Wis. 155, 118 N. W. 633, and in *Van Dinter v. Worden-Allen Co.* 153 Wis. ——, 138 N. W. 1016. So we will turn our attention to the real crux of the case as disclosed by the evidence and consider whether or not plaintiff assumed the risk resulting from the location of the dump-box.

It is elementary that where the dangers of a servant's working place are open and obvious to and appreciated by him, he assumes the risk thereof by continuing in the employment without objection.    *Hencke v. Ellis,* 110 Wis. 532, 86 N. W. 171.    Plaintiff was a man of mature years, an experienced teamster accustomed all his life to the handling and driving of horses, and was thoroughly familiar with the location of the dump-box, the conveyor, and the shaft.    He knew that he had to duck his head slightly when sitting on the seat while driving under the dump-box or else it would strike his head.    The danger of so coming in contact with it was quite obvious and apparent to any one.    Indeed, his counsel freely concedes that plaintiff assumed the risk of being hit by the dump-box while sitting on the dump-cart and driving underneath it in the ordinary course of his employment.    But it is argued that he did not assume the risk of being dashed against the dump-box by the frightening and shying of his team; that he did not know and could not reasonably anticipate that his horses would shy at the conveyor, and that, in

attempting to control them and while momentarily looking back to see that the cart cleared, his head would strike the dump-box. Perhaps it can be said that plaintiff could not reasonably anticipate this particular combination of circumstances that caused his injury. He did know, however, that he must duck his head while driving under the dump-box. He also knew his team was likely to shy at the conveyor when he drove in at the time he was injured, for they shied at it half an hour previously. He intentionally went to empty other boxes between the time he drove in from the east, when the horses became frightened, and the time he drove in from the west and was injured, presumably for the purpose of giving them time to quiet down. And he says he drove in from the west so that the off horse would be further from the conveyor and less likely to become frightened. So it is evident from his own testimony that he had in mind the likelihood of his horses shying and shaped his conduct with reference thereto. How, then, can it be said that he did not assume the risk of their doing just what he anticipated they might do and what he sought to guard against? He also knew, as an experienced teamster, that if they did shy or plunge they might at least momentarily engross his attention to the exclusion of looking out for his own safety. All this he must have known and appreciated. He therefore knew and appreciated each separate element that went to make up the risk. He may not have known or anticipated the particular combination these separate elements of risk would take in producing the injury inflicted. But that is not essential. It is not necessary that the precise injury should be anticipated, or that it should be foreseen that an injury may happen in a particular manner. It is sufficient if an ordinarily careful and prudent person ought, under the circumstances, to have foreseen that an injury might probably result from the risk in question. *Coolidge v. Hallauer,* 126 Wis. 244, 105 N. W. 568; *Coel v. Green Bay T. Co.* 147 Wis. 229, 133 N. W. 23. The case

of *Hocking v. Windsor S. Co.* 125 Wis. 575, 104 N. W. 705, is cited as supporting a different rule. It is there said:

"The general rule is that the servant assumes the usual and ordinary risks of his employment; but before he can be held to have assumed an unusual or extraordinary risk he must know, or have reasonable means of knowing, the precise danger to which he is exposed and which he thus assumes, and a mere vague surmise of the possibility of danger is not sufficient to warrant the court in taking the case from the jury."

This is a correct statement of the law. But by the words "precise danger" is not meant the precise manner in which the injury is inflicted. Those words refer to the particular hazard, risk, or danger from which an injury may result in a variety of different ways, as distinguished from the general hazards of an employment. In the case at bar the precise danger was caused by the location of the dump-box, conveyor, and shaft in view of the work that had to be carried on under and about them. It was the danger of coming in contact with the dump-box while at work. *Renne v. United States L. Co.* 107 Wis. 305, 83 N. W. 473. This precise danger the plaintiff knew and understood.

It is further urged that the danger to the plaintiff of being hurt in driving under the dump-box in the ordinary course of his employment was so slight that he ought not to be held to have assumed the risk. If by this is meant that the chance of his coming in contact with the dump-box was slight, it cannot avail him, for whatever that chance was he assumed the risk thereof. If it is meant that the chance of injury upon coming in contact with it was slight, we cannot agree with the contention. So in any view of the case we reach the conclusion that plaintiff assumed the risk. This result is fully sustained by the case of *Jones v. Milwaukee E. R. & L. Co.* 147 Wis. 427, 133 N. W. 636, and cases there cited. The trial court therefore properly directed a verdict for the defendants.

*By the Court.*—Judgment affirmed.