LUEBBEN, Administrator, Appellant, vs. WISCONSIN TRAC-
TION, LIGHT, HEAT & POWER COMPANY, Respondent.

*April 12—October 7, 1913.*

*Master and servant: Street railways: Injury to conductor from de-
fect in track: Assumption of risk.*

1. A street railway conductor received injuries resulting in death
   by being thrown from the running board of an open car at a
   place where the track was defective, while the car was oper-
   ated in the usual manner and at the usual rate of speed. It
   was the second summer of his experience as a conductor, and
   for more than a month prior to the injury he had many times
   daily passed over the same defect in the track, which jolted
   the car substantially in the same way. *Held*, that he must
   have known of the defect and appreciated the risk of injury
   arising therefrom; hence that there could, be no recovery
   against the street railway company for his death.
2. To defeat a recovery in such case it is not necessary that the
   conductor should have anticipated the precise injury or the
   particular manner in which it occurred. It is sufficient if he,
   as a reasonably prudent man, ought to have anticipated that
   some injury might probably result from his being thrown
   from the car on account of the defective track.
   TIMLIN, SIEBECKER, and KERWIN, JJ., dissent.

APPEAL from a judgment of the municipal court of Outa-
gamie county: THOMAS H. RYAN, Judge. *Affirmed.*

Action to recover damages for the death of B. F. Luebben,
alleged to have been caused by the negligence of the defendant
in failing to keep in repair its street-car track in the city of
Appleton. The deceased was a conductor in the employ of
the defendant, on what is called an open car having no aisles
in the center. The conductor collected the fares standing on
a running board about nine inches wide, sloping slightly out-
wards and extending from one end of the car to the other
about half way between the ground and the floor of the car.
If need be, he supported himself by taking hold of the handles
of the seats. At two points on the running board the axles
projected into it about half way, and for a distance of about

fifteen inches in width it was higher over the axles.   On
August 17, 1910, at about 5:45 p. m., the deceased was stand-
ing on the running board when the car went over a rough por-
tion of the track on State street, and was thrown to the
ground and received injuries from which he afterwards died.
In the summer of 1909 he had been employed in the after-
noons as a conductor for the defendant.   He resumed such
duties again in the fore part of July, 1910, running from
3 o'clock in the afternoon to 11:45 o'clock in the evening.
It took about an hour to make a round trip on the route the
deceased ran, and the rough condition of the track had re-
mained about the same for several months prior to the day
he was injured.   The following special verdict was returned:

"(1) Was the decedent, Bernard F. Luebben, on the
16th day of August, 1910, while at work for the defendant
as street-car conductor on its car No. 32, injured by falling
therefrom?   A. (By the court). Yes.

"(2) Did Bernard F. Luebben die as the result of such
injuries?   A. Yes.

"(3) Was the deceased caused to fall from the car by rea-
son of a defect in the track, as shown by the evidence, over
which said car was being operated?   A. Yes.

"(4) If you answer the foregoing question 'Yes,' was
such defective condition of the track the proximate cause of
the deceased falling from said car?   A. Yes.

"(5) If you answer question numbered 3 'Yes,' then an-
swer this question: Did such defect exist for a sufficient
length of time to have enabled the defendant, in the exer-
cise of ordinary care, to have repaired the same?   A. Yes.

"(6) If you answer the foregoing question 'Yes,' was the
defendant guilty of want of ordinary care in failing to re-
pair the same?   A. Yes.

"(7) If you answer the third question 'Yes,' would a per-
son of ordinary care, who had passed over said track with
the frequency with which the deceased had ridden over the
same, have known of the existence of such defect?   A. Yes.

"(8) Was the deceased guilty of any want of ordinary
care which contributed to his injury?   A. No.

"(9) If you answer question numbered 3 'Yes,' would a person of ordinary care, possessing the knowledge and the opportunity for knowledge of such defect which the deceased possessed, have known and appreciated the danger of operating the car over the track in question at the speed at which the car was being operated at the time of the accident? A. No.

"(10) If the court should be of the opinion that the plaintiff should recover, at what sum do you assess the plaintiff's damages? A. $4,630.41."

The trial court, upon motion of the defendant, changed the answers to questions 8 and 9 from No to Yes, and upon the verdict as thus modified rendered judgment for the defendant. The plaintiff appealed.

For the appellant the cause was submitted on the brief of *Francis S. Bradford,* attorney, and *J. Elmer Lehr,* of counsel.

For the respondent there was a brief by *Van Dyke, Rosecrantz, Shaw & Van Dyke,* and oral argument by *James D. Shaw.*

The following opinion was filed April 29, 1913:

VINJE, J. Defendant argues that the answers returned by the jury to questions 8 and 9 are not inconsistent with the answer to the seventh question, and that hence it was entitled to judgment upon the verdict as returned. We are satisfied that the trial court properly changed the answer to question 9 from No to Yes, and that the verdict so changed called for a judgment in favor of the defendant, and shall therefore not consider the alleged inconsistency of the jury's findings. The case seems to be barren of any contributory negligence, strictly so called, on the part of the deceased, and the court's change of answer to question 8 must be construed only as a finding that the deceased assumed the risk. At any rate, if the evidence shows that the risk of the uneven track was assumed by the deceased recovery cannot be had.

A considerable portion of the argument in behalf of the plaintiff is to the effect that defendant failed to furnish the

deceased a safe place in which to work owing to the rough-
ness of the track generally and the special defect at the place
of the injury, and that it was negligent in not repairing the
track. Defendant's negligence is a verity in the case, and no
time need be devoted to a discussion of that question. The
plaintiff's witness Turkow, who was the motorman at the
time of the injury, after testifying generally to the roughness
of the track all along State street, thus described the place
where deceased fell from the car:

"Right on Seventh street, on the north end on the north
crossing of Seventh, there was a kind of a hole there, and
the rails didn't come together. About an inch or an inch
and a half of the rails were loose. There was a give to the
rails, that is where the rails were fastened there was a give.
There was a hole, and every time we went over there when
the trucks struck that, there was a jolt. . . . The condition
of the rails at Seventh street caused the car to jolt whenever
it would strike that hollow place. Every time you went over
that place it would give the motion of the car which I de-
scribed. It threw the car. When the car went down, it
seemed as though it struck something right there, and it
kind of jerked the car. I felt that. I always felt the jar
on the front trucks, but I could not feel the rear. I felt the
same motion every time I went south for several months be-
fore the accident. The cars would always swing there, but
this [referring to the time of the injury] was kind of a sud-
den jerk. We were running as usual that night. I felt
the same motion coming over after the accident."

Plaintiff's witness Wirtz testified to the effect that he saw
Luebben on the car the night of the accident, as the car was
about ten or fifteen feet north of the north crossing at Sev-
enth street. As the car struck that crossing Luebben's feet
went up and his head and shoulders down. The witness
Zuehlke testified:

"I saw Ben Luebben collecting fares on State street. I
noticed him walking along the running board towards the
front end of the car, collecting fares, and on his return he

came to the rear end of the car and attempted to reach up to something, and then all of a sudden I noticed he was off the car, and apparently on the ground on his head and shoulder."

Thus the evidence discloses that the deceased, who was forty-two years old, received injuries resulting in death by being thrown from the running board of an open car at a place where the track was defective while the car was operated in the usual manner and at the usual rate of speed; that it was the second summer of his experience as a street-car conductor; and that for over a month previous to the injury he had many times daily passed over the same defect in the track when it jolted the car substantially in the same way. It seems to us that the only reasonable inference to be drawn from the undisputed facts in the case is that the deceased knew of the defect and appreciated the risk of injury arising therefrom. Who better than an adult person that has daily traveled back and forth on a running board as the car passed over a rough track can appreciate the danger of being thrown therefrom and sustaining an injury as a result of the fall? It is not necessary that he should be held to have anticipated the precise injury or the particular manner in which it occurred, or the exact extent thereof. It is sufficient if he, as a reasonably prudent man, ought to have anticipated that some injury might probably result from his being thrown from the car on account of the defective track. *Coolidge v. Hallauer,* 126 Wis. 244, 105 N. W. 568; *Coel v. Green Bay T. Co.* 147 Wis. 229, 133 N. W. 23; *Dodge v. Kaufman,* 152 Wis. 171, 139 N. W. 741. Among cases in our own court that tend to sustain the conclusion reached, though under a different state of facts, may be cited: *Laughy v. Bird & W. L. Co.* 136 Wis. 301, 117 N. W. 796; *Hanson v. Superior Mfg. Co.* 136 Wis. 617, 118 N. W. 180; *Mahar v. Montello G. Co.* 146 Wis. 46, 130 N. W. 949; *Jones v. Milwaukee E.*

*R. & L. Co.* 147 Wis. 427, 133 N. W. 636; and *Dodge v. Kaufman,* 152 Wis. 171, 139 N. W. 741.

*By the Court.*—Judgment affirmed.

The following opinion was filed May 1, 1913:

TIMLIN, J. (*dissenting*).   I agree that the actionable negligence of the defendant is established by the evidence and by the verdict; that the evidence and the verdict establish that there was no contributory negligence on the part of deceased; and that the defect in the track which caused the death was, "kind of hole there and the rails didn't come together. About an inch or an inch and a half of the rails were loose. There was a give to the rails, that is where the rails were fastened there was a give. . . . There was a hole there, and every time we went over there when the trucks struck that there was a jolt."   For about a foot and a half on either side of the joint there was no gravel or crushed stone for a space of about three inches wide on the inside and the outside of the rail.   That condition remained for several months before the accident.   This condition of the rails at the Seventh street crossing caused the car to jolt whenever it would strike that hollow place, but sometimes the jolt was more severe than at others, depending upon how the car took the rail. This was not a usual risk, because the duty to repair was continuous, the condition illegal and abnormal, and repairs were due and no doubt were in progress every day.   There was evidence that the motorman on this car had called the attention of defendant's superintendent to the defect in question before the injury.   I also agree that the case turns upon the question of assumption of risk by deceased.

I was forcibly impressed with the injustice of the decision of the court in this case.   The law cast upon the defendant the duty of keeping its tracks in repair.   Its neglect of that

duty is encouraged and rewarded by immunity from liability. The deceased, upon whom the law cast no such duty, must however answer therefor with his life. Defects in street railway tracks like the small defect described are so common that they exist in every city and in every street railway track, and thousands of passengers and employees ride over them thousands of times without any immediate or pressing suggestion of danger. It appears to me to be artificial, unreal, and untrue to expect that the breadwinner of the family should abandon his work and return to his dependent wife and children and he and they should wait until he succeeds in obtaining other work or is supported by public charity because he discovered, or might in the exercise of ordinary care have discovered, that at a certain joint in the rails of the track over which he was operating his car the ends of the rails were an inch or an inch and a half apart, and for a foot and a half each way from this joint and for a width of three inches there was no gravel or concrete, and that the rails yielded or pressed down and the car jolted when passing over this place. I dare say that in real life if he did quit work for this reason his employer and practical men generally would imagine him suffering from some mild form of insanity. Experience has not the legal value as a factor in this case which is sometimes given to it, because experience here would only confirm the deceased in the impression that he could without danger continue at his work. If the law is so foolish and unjust as this I concede that it is for the legislature to change it. I have no desire to change the law. If this is the law, I say *"Fiat jus ruat justitia."* But if the majority opinion operates unjustly and disregards and undermines established precedents, it is not only my privilege but my duty to show this. This led me to a somewhat careful investigation of the cases. The evidence in this case was fully reflected by the verdict before the verdict was changed by the trial court, and there was no ground for changing the

answers of the jury unless that suggested in the majority opinion to the effect that an affirmative answer to the ninth question was necessary because the fifth question was answered in the affirmative. Upon the verdict returned by the jury as well as upon the evidence the plaintiff was entitled to judgment under decisions of this court.

| *Verdict in Darcey v. Farmers' L. Co. 98 Wis. 573.* | *Verdict in the instant case.* |
|---|---|
| (1) Finds against defendant upon all facts requisite to make it liable for negligence in the absence of assumption of risk or contributory negligence on the part of plaintiff. | (1) Finds against defendant upon all facts requisite to make it liable for negligence in the absence of assumption of risk or contributory negligence on the part of deceased. |
| (2) Finds that the location, situation, and surroundings of the saw and the extent to which it was exposed were known to plaintiff prior to the injury. | (2) Finds that a person of ordinary care who had passed over the track as often as deceased would have known of the existence of the defect. |
| (3) | (3) Finds there was no contributory negligence. |
| (4) Finds that the plaintiff did not know nor ought he reasonably to have expected or foreseen under the circumstances that an injury would be liable to occur to him while performing his duties in the mill by coming in contact with the saw. | (4) Finds that a person of ordinary care possessing the same knowledge and opportunity for knowledge of the defect as deceased would not have known and appreciated the danger of operating the car over the track in question at the speed with which the car was operated at the time of the injury. There is no finding as to the rate of speed, but the uncontroverted evidence is that the speed was usual and ordinary and about eight miles per hour. |
| Judgment for plaintiff. | Judgment for defendant. |

*Darcey v. Farmers' L. Co., supra,* was before this court three times, 87 Wis. 245, 58 N. W. 382; 91 Wis. 654, 65 N. W. 491; and 98 Wis. 573, 74 N. W. 337. Eminent and able

counsel appeared and the case was fully considered, if six years' litigation and three hearings in this court are sufficient for that purpose.  The injury was inflicted in 1891, the case finally decided in 1898, and the earliest statute taking away the defense of assumption of risk with reference to uncovered machines was enacted in 1905.  Saws were not included among the machines required to be covered or guarded until the enactment of ch. 470, Laws of 1911.  So that case was, like the instant case, a question of the common law of negligence of an employer resulting in injury to an employee. The decision in the instant case does not purport to overrule *Darcey v. Farmers' L. Co., supra*—it merely disregards it. Precedents, it would seem, are almost sacrosanct when they relate to property, but when they relate to life or safety of a workman they are easily and lightly disposed of, as in *Willette v. Rhinelander P. Co.* 145 Wis. 537, 543, 130 N. W. 853, where it was said of a troublesome precedent of this kind: "It may be that all who concurred . . . did not intend to hold," etc., as the precedent read.  So in *Darcey v. Farmers' L. Co., supra,* it may be that all who concurred in giving judgment for the plaintiff did not intend to hold that the plaintiff should have judgment.  The defect found in *Darcey v. Farmers' L. Co., supra,* was much more suggestive of danger than in the instant case.  In the last decision nothing is said in the opinion of the court to indicate that the case was decided because of "the law of the case" as established by prior decisions in the same case.  This is put forward in a concurring opinion by Mr. Justice MARSHALL and somehow found its way into the syllabus, but in any event it must be conceded that such "law of the case" was declared and established by this court in some or all of these opinions.

Whether a defect is suggestive of danger depends upon the nature of the defect.  A defective street railway track is not necessarily suggestive of danger unless the defect is an unusual one and unlike that described in the instant case.  The defect itself is not visible to the conductor while he is engaged

in his duty. He can only judge of the extent of it by alight-
ing and making an inspection or by the degree of the jolt.
He may well have knowledge of the defect in such case and
yet not know the risk or danger he may assume by continu-
ing in his breadwinning occupation. *Darcey v. Farmers' L.
Co., supra,* was attempted to be distinguished in *Williams
v. J. G. Wagner Co.* 110 Wis. 456, 86 N. W. 157, by the
present chief justice on this very ground. It is there said
that in the former case the dangerous appliances were not
connected with the machines about which plaintiff was work-
ing and were wholly or partially concealed from view while
plaintiff was engaged at his ordinary duties, a distinction
which must be admitted as pertinent in the instant case. It
may be readily conceded that, where the defect is of such a
nature that knowledge of its existence is equivalent to knowl-
edge of the danger, the risk is assumed, but I think it must
also be conceded that a situation may exist where knowledge
of a defect is not knowledge of the danger, and this is well
supported by precedents. To the competent lawyer this will
substantially explain and distinguish every case apparently
to the contrary of this dissent.

The opinion in *Dorsey v. Phillips & C. C. Co.* 42 Wis.
583, was written by Chief Justice RYAN about thirty-five
years ago. There was a special verdict, in which the ques-
tions were so answered as to entitle the plaintiff to judgment,
but upon a motion for nonsuit denied and upon exceptions
to the, instructions and to the special verdict the question
whether mere knowledge of the defect would alone defeat a
recovery was raised and considered. The defect in that
case was the proximity of a cattle chute to a railroad track,
and it was there held that knowledge of the defect without
knowledge of the danger would not defeat recovery. The
court said:

"For though it certainly appears that the respondent
knew of the general relation of the cattle chute to the track,

it does not appear that he knew, or had such means of information as would charge him with knowing, its precise relation to the track, its distance, and its danger. There is indeed evidence tending to show that he had some impression of its dangerous proximity; perhaps not more than the vague idea of danger suggested by adjacent objects generally. Even this we understand him to deny. The court could not say, as matter of law, that he knew of the extraordinary danger, and continued his employment at his own risk of it."

In *Haley v. Jump River L. Co.* 81 Wis. 412, 51 N. W. 321, 956 (1892), this rule is reaffirmed and applied by Justice WINSLOW in these words:

"The principle is that if the alleged defect or element of danger is such that, in the exercise of ordinary care, the plaintiff ought to have observed it *and comprehended the danger likely to result,* then he assumes the risk if he continues in the employment without complaint." Citing *Dorsey v. Phillips & C. C. Co., supra; Ballou v. C., M. & St. P. R. Co.* 54 Wis. 257, 11 N. W. 559; and *Goltz v. M., L. S. & W. R. Co.* 76 Wis. 136, 44 N. W. 752.

In the opinion on rehearing written by Justice LYON in the *Haley Case,* 81 Wis. 412, 423, 51 N. W. 321, 956, it was said:

"The court was asked in a variety of forms, but refused, to charge the jury in substance that if the danger caused by the presence of the log in the ditch was known to the plaintiff, or might by the use of reasonable or ordinary care have been known to him, he is presumed to have known it and assumed the risk. The proposed instructions do not make the want of actual or imputed knowledge of the presence of the log the test of defendant's liability, but make such test the want of knowledge, or reasonable means thereof, of the *danger* resulting from the presence of the log where it was left. Had the proposed instruction related only to knowledge that the log was there, the case would be within the rule in the *Dorsey Case (Dorsey v. Phillips & C. C. Co.)* 42 Wis. 583, and the *Hulehan Case (Hulehan v. G. B., W. & St. P. R. Co.)* 68 Wis. 520, 32 N. W. 529." The word "danger" is italicised as above in the opinion.

In *Luebke v. Berlin M. Works,* 88 Wis. 442, 448, 60 N. W. 711, the rule is thus stated by Justice PINNEY, speaking for the court:

"It is well settled that if the alleged defect or element of danger is such that, in the exercise of ordinary care, the servant ought to have observed it and comprehended the danger likely to result, then he assumed the risk if he continued in the employment." Citing *Haley v. Jump River L. Co., supra; Dorsey v. Phillips & C. C. Co., supra; Ballou v. C., M. & St. P. R. Co.* 54 Wis. 257, 11 N. W. 559; and *Goltz v. M., L. S. & W. R. Co.* 76 Wis. 136, 44 N. W. 752.

Observe that the rule as there stated by Justice PINNEY goes a little beyond the cases cited to sustain it, but the idea that there must be something more than the mere knowledge of the defect in cases where the defect is not necessarily dangerous is quite plain.

In *Peterson v. Sherry L. Co.* 90 Wis. 83, 93, 62 N. W. 948, the expression is: "Defect . . . or an element of danger not usual or incident to his employment, which he either knew or ought reasonably to have known and appreciated." *Kennedy v. Lake Superior T. & T. R. Co.* 93 Wis. 32, 39, 66 N. W. 1137, was a case of a defective railroad track caused by allowing ash piles to accumulate thereon, and CASSODAY, C. J., writing the opinion of the court, said:

"We cannot say, under the circumstances mentioned, as a matter of law, that the plaintiff assumed the risk. This court has repeatedly held, in effect, that before an employee can be held to have assumed an unusual or extraordinary risk, he must know, or have reasonable means of knowing, of the precise danger to which he is exposed and which he thus assumes; and that a mere vague surmise of the possibility of danger is not enough to take the case from the jury." Citing the *Dorsey Case, supra; Nadau v. White River L. Co.* 76 Wis. 120, 132, 43 N. W. 1135; *Kelleher v. M. & N. R. Co.* 80 Wis. 584, 50 N. W. 942; *Haley v. Jump River L. Co.* 81 Wis. 412, 426, 51 N. W. 321, 956.

In *Simonds v. Baraboo,* 93 Wis. 40, 43, 67 N. W. 40, Mr. Justice MARSHALL, writing the opinion of the court, said in a negligence case in which a city was defendant: "Previous knowledge was not of itself conclusive evidence of contributory negligence." Citing among other cases the *Dorsey Case, supra.* In *Curtis v. C. & N. W. R. Co.* 95 Wis. 460, 468, 70 N. W. 665, Justice PINNEY, writing the opinion of the court in the case of a negligent injury caused by an unblocked switch rail, said, quoting from the *Kennedy Case, supra:*

"This court has repeatedly held, in effect, that, before an employee can be held to have assumed an unusual or extraordinary risk, he must know, or have reasonable means of knowing, of the precise danger to which he is exposed and which he thus assumes; and that a mere vague surmise of the possibility of danger is not enough to take the case from the jury." Citing the *Kennedy Case, supra,* and the *Dorsey Case, supra.*

In *Hennesey v. C. & N. W. R. Co.* 99 Wis. 109, 74 N. W. 554, we find the majority opinion by Justice WINSLOW, in a case where a railroad roadbed was defective by reason of a visible open ditch therein and it was claimed deceased assumed the risk, saying:

"There being evidence tending to show that the ditch in question was substantially different from the openings at the other switches, and the dangers to be apprehended greater in degree as well as different in character, it cannot be said, as matter of law, that the intestate assumed the risk because he had not seen and appreciated the special danger at this one switch." Citing cases.

Observe it is here not a question of knowledge of the defect, but of the danger which must not only have been seen but also appreciated, according to this case. There was a dissenting opinion by Mr. Justice MARSHALL in which it was suggested that the *Dorsey Case* was not intended to go so far

as it seems apparent that it does go and that it was liable to be misconstrued. It seems to me the last is conclusively shown by this dissenting opinion.

*Hulehan v. G. B., W. & St. P. R. Co.* 68 Wis. 520, 32 N. W. 529, was an action for negligent injury brought by an experienced employee against his employer to recover for injuries caused by a defective track or roadbed. The particular defect consisted of blocks of wood strewn along the track at a place where brakemen were required to couple and uncouple cars. In affirming a judgment for the plaintiff Mr. Justice TAYLOR said:

"Even had he known of the existence of the wood lying along the side of the track at the place where he was injured, it would not be conclusive against him. He might have had a general knowledge of the defects of the road, but may not have had such knowledge of the dangerous character of such obstructions as to absolutely charge him with the assumption of all the risks arising from such obstructions. Notwithstanding his knowledge of the fact of the obstructions, still it was a question for the jury whether he was guilty of negligence in remaining in the employ of the defendant after such knowledge."

Apply this to the verdict in the instant case, where the jury found, not that the deceased knew of the defect in the track, but that he ought to have known of the existence of the defect, and followed that by a finding that with such knowledge of the defect he was without knowledge of the danger of operating the car over such track.

All of the foregoing cases relate to assumption of risk by adults.

In *Renne v. United States L. Co.* 107 Wis. 305, 83 N. W. 473 (1900), Chief Justice CASSODAY writing the opinion of the court, this rule was applied to an infant and reaffirmed, and it was noted that the rule had been applied in the case of adults and should not be less favorable in the case of an

infant.  *Hocking v. Windsor S. Co.* 125 Wis. 575, 104 N. W. 705 (1905), appears to be a unanimous decision of this court written by Mr. Justice KERWIN twenty-eight years after the *Dorsey Case.*   There the rule is reiterated and applied as follows:

"The general rule is that the servant assumes the usual and ordinary risks of his employment; but before he can be held to have assumed an unusual or extraordinary risk he must know, or have reasonable means of knowing, the precise danger to which he is exposed and which he thus assumes, and a mere vague surmise of the possibility of danger is not sufficient to warrant the court in taking the case from the jury."   Citing cases.

Again: "Where there is doubt whether the servant assumes the risk the question is for the jury."   Citing *Revolinski v. Adams C. Co.* 118 Wis. 324, 95 N. W. 122; *Grant v. Keystone L. Co.* 119 Wis. 229, 96 N. W. 535.

I may add that this is the effect of the *Dorsey Case* and all cases following it.

*Hemmingsen v. C. & N. W. R. Co.* 134 Wis. 412, 114 N. W. 785 (1908), was a case where an experienced brakeman went between the platform and the track and was crushed and killed by a coming freight car.   The platform was so close to the track that there was no room for the body of deceased between it and the oncoming car, and of course both the track and the platform and their proximity were visible, but the space between might have been gauged incorrectly.   In affirming a judgment for the administrator of deceased, this court, by Justice KERWIN, said: "A case more in point than any cited is *Dorsey v. Phillips & C. C. Co.* 42 Wis. 583. There the facts were very similar to those in the case before us, and this court held that the questions of assumption of risk and contributory negligence were for the jury."   Citing cases.

In *Haring v. G. N. R. Co.* 137 Wis. 367, 371, 119 N. W. 325, the *Dorsey Case* is again mentioned with approval, and

the case under consideration distinguished upon the ground that in the *Dorsey Case,* like the instant case, the servant was expected to occupy the unsafe place while in the performance of his duty.    This brings the *Dorsey Case* down to 1909.

Looking abroad to ascertain whether there is anything local or novel about this doctrine and condensing the matter into as small a space as possible, I cite a few authorities.

*Fitzgerald v. Connecticut River P. Co.* 155 Mass. 155, 29 N. E. 464, where the subject is learnedly reviewed.    This case has been followed many times in Massachusetts.    *Galveston, H. & S. A. R. Co. v. Smith,* 24 Tex. Civ. App. 127, 57 S. W. 999; and see the note to *Houston, E. & W. T. R. Co. v. De Walt,* 97 Am. St. Rep. 877, 893 (96 Tex. 121, 70 S. W. 531), where the law on this subject is summed up as follows:

"There is a distinction between knowledge of defects in premises and appliances and knowledge of the risks and dangers that result from such defects.    If an employee has knowledge of a defect, or is chargeable with notice of it because obvious, but is not aware of the danger incident to and attending it, he is not precluded from recovering damages incurred by reason of such defect."    Citing *Nofsinger v. Goldman,* 122 Cal. 609, 55 Pac. 425; *Ill. S. Co. v. Schymanowski,* 162 Ill. 447, 44 N. E. 876; *Ill. S. Co. v. Ryska,* 200 Ill. 280, 65 N. E. 734; *Hartrich v. Hawes,* 202 Ill. 334, 67 N. E. 13; *Myhan v. Louisiana E. L. & P. Co.* 41 La. Ann. 964, 6 South. 799; *Christiansen v. Northwestern C. B. Co.* 83 Minn. 25, 85 N. W. 826; *Sullivan v. H. & St. J. R. Co.* 107 Mo. 66, 17 S. W. 748; and other cases.

One may know the facts and not know the danger arising therefrom and still recover.    *Pool v. C., M. & St. P. R. Co.* 53 Wis. 657, 11 N. W. 15; *S. C.* 56 Wis. 227, 14 N. W. 46. To voluntarily place oneself in a dangerous position is not such contributory negligence as will prevent recovery for an injury caused by the negligence of another, unless the danger is so manifest that no person of ordinary care or prudence

would go or remain there under the circumstances. *Lawson v. C., St. P., M. & O. R. Co.* 64 Wis. 447, 24 N. W. 618. That a person injured through defect in a bridge knew of such defect before driving on the bridge does not establish contributory negligence as matter of law. *Spearbracker v. Larrabee,* 64 Wis. 573, 25 N. W. 555; *Wheeler v. Westport,* 30 Wis. 392. "Under such circumstances the danger is open and obvious; and when the danger is open and obvious, free from uncertainty and obscurity, and the servant of mature years and ordinary intelligence, he assumes the risk when he knows or ought to know that danger." *Gierczak v. Northwestern F. Co.* 142 Wis. 207, 214, 125 N. W. 436. The foregoing is no doubt a correct statement of the law, but why is the word "danger" used by the usually accurate and learned chief justice if he meant "defect"? In *Halwas v. American G. Co.* 141 Wis. 127, 123 N. W. 789, in discussing the assumption of risk it is said: "The plaintiff was not charged with the duty of inspection, and it does not appear that the defective and unsafe condition of the ground was so obvious as to charge him with knowledge of the danger."

A cursory reading might suggest some conflict between *Stetler v. C. & N. W. R. Co.* 49 Wis. 609, 6 N. W. 303, and *Jones v. Milwaukee E. R. & L. Co.* 147 Wis. 427, 133 N. W. 636. But the first mentioned proceeds upon a risk not assumed and considers the negligence of a fellow-servant which is an assumed risk co-operating with a cause for which the master was liable, while the second considers such negligence of a fellow-servant as co-operating with a cause for which the master was not liable, because the latter risk was also assumed; the danger in that case being obvious.

Where the physical condition of an arch was visible, but the jury found that the danger of its falling was not apparent to deceased, an unskilled workman, a recovery was sustained. *Gill v. Homrighausen,* 79 Wis. 634, 48 N. W. 862. A man is not presumed to have assumed a risk which he does not

comprehend.  *Jones v. Florence M. Co.* 66 Wis. 268, 28 N. W. 207.  Where an employee saw a freight car approaching him upon a down grade and got in front of it to stop it with a bar, it was held that his knowledge of the danger of so doing was not so apparent as to take the question of contributory negligence or assumption of risk from the jury.  *Gussart v. Greenleaf S. Co.* 134 Wis. 418, 114 N. W. 799.

I do not hereby seek to apply to adults the rule applicable to infants.  The latter must not only have known the danger, but also have appreciated the risk, before they can be charged with either contributory negligence or assumption of risk; but the rule that knowledge of all obvious dangers is imputed to an adult servant applies as well to minors so far as their age, experience, discretion, and judgment enable them to understand and appreciate these dangers.  *Van de Bogart v. Marinette & M. P. Co.* 127 Wis. 104, 106 N. W. 805.  I do not contend that, where the defect is of such a character that danger therefrom is imminent or obvious, mere knowledge of the defect is not knowledge of the danger or of the risk, or that the employee continuing in his work in such case does not necessarily assume the risk.  The jury found upon ample evidence that a person of ordinary care, consequently this plaintiff, would not have known and appreciated the danger of operating the car over the track in question The word "appreciated" might have been properly omitted in the case of an adult, but that is entirely immaterial to the discussion or disposition of the instant case.  If we strike out or disregard the finding that there was no contributory negligence, and the ninth finding, the plaintiff would still be entitled to judgment, because the mere finding of knowledge of such a defect does not establish knowledge of the danger or risk, and the affirmative defense of contributory negligence or that of assumption of risk not having been found against the plaintiff, no defense on either of these grounds is made out.  It is enough that in the instant case the jury failed to

find that the deceased assumed the risk by merely finding that he ought to have had knowledge of the defect, the defect being of the character described. But the ninth question of the special verdict is not wholly immaterial. It, with the absence of any other finding of knowledge of the danger on the part of the deceased and with the undisputed evidence in the case, does negative the assumption of risk.

I can see nothing in the cases cited in the majority opinion to warrant the decision in this case. *Coolidge v. Hallauer,* 126 Wis. 244, 105 N. W. 568, affirms a judgment for the plaintiff upon a promise by the master to repair, and recognizes the distinction here attempted to be made between defects which indicate an obvious danger and those which do not. *Coel v. Green Bay T. Co.* 147 Wis. 229, 133 N. W. 23, affirms a judgment for the plaintiff, and in no manner relates to defect or notice of defect in a place to work or in an appliance. *Dodge v. Kaufman,* 152 Wis. 171, 139 N. W. 741, affirms a judgment for the defendant upon the ground of assumption of risk, but it is expressly stated in the opinion: "If it is meant that the chance of injury upon coming in contact with it was slight, we cannot agree with the contention." The other cases, I think, are obviously not in point.

It is easy to say that the deceased, knowing of this defect in the track, must have known that it was dangerous to continue the employment, but that is so obviously incorrect in fact to any person of experience that it carries with it its own refutation. In fact it was no more dangerous than riding a horse or riding in an automobile or riding in a vehicle upon any imperfect highway.

SIEBECKER and KERWIN, JJ. We concur in the foregoing dissenting opinion of Mr. Justice TIMLIN.

A motion for a rehearing was denied, with $25 costs, on October 7, 1913.